**In re CENTRE COURT APARTMENTS, LTD., Debtor.**

**In re EXECUTIVE PROPERTIES, LTD., Debtor.**

**Bankruptcy Nos. 87–00911–JB, A87–00910–JB.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 21, 1988.

James C. Cifelli, Lamberth, Bonapfel, Cifelli & Willson, Atlanta, Ga., for debtors.

Paul E. Pressley, Hatcher, Irvin & Pressley, Atlanta, Ga., for Julius Iteld and Paul Klein.

*MEMORANDUM OPINION
AND ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This case presents the question of whether an oversecured creditor can enforce provisions for attorney's fees in a note and deed to secure debt as allowed under Georgia law in a Chapter 11 case when the Chapter 11 debtor proposes a plan to cure and reinstate the debt pursuant to 11 U.S.C. § 1124(2) and when the debtor in fact cures all arrearages and reinstates the debt and then pays the creditor in full the very next day from a Court approved sale of the collateral. The answer requires an analysis of the nature of the creditor's attorney's fee claim under Official Code of Georgia Annotated § 13–1–11 and an analysis of the effect of 11 U.S.C. § 1124(2) and 11 U.S.C. § 506(b) on the attorney's fee claim.

I. *Factual and Procedural Background*

The two Chapter 11 debtors here, Executive Properties, Ltd., and Centre Court Apartments, Ltd., purchased an apartment complex located in Clayton County, Georgia (the "Property") in December of 1981 from Julius Iteld and Paul Klein. Both debtors are California limited partnerships. Centre Court Apartments, Ltd., purchased a 53.2% interest in the Property, and Executive Properties, Ltd. purchased the remaining 46.8% interest. In connection with that purchase, the debtors executed a purchase money promissory note in the principal amount of $700,000.00 (the "Note") and a purchase money deed to secure debt to secure that Note. The Note was payable in graduated amounts with a final balloon payment in 1991. The Note provided, in pertinent part, as follows:

> Should this Note, or any part of the indebtedness evidenced hereby, be collected by law or through an attorney, the holders shall be entitled to collect reasonable attorneys fees and all costs of collection.

The purchase money deed to secure debt provided, in pertinent part, as follows:

> And Grantor hereby further covenants and agrees that in case of any default in any partial payment of said indebtedness or in the due performance of any of the covenants herein expressed to be performed by Grantor, then and in that event, the entire amount of said principal indebtedness, together with any and all sums paid for account of Grantor in accordance with the provisions above set forth, shall, at the option of Grantee, then and thereby become and be due and payable forthwith, with accrued interest, and all expenses and cost of collection, *including fifteen per centum of the amount due as attorney's fees,* and the amount of such costs, expenses and fees shall be added to the amount of the debt hereby secured as part thereof and as such shall also be covered by the security of this deed; and time is the essence of this contract. (emphasis added)

In December of 1982, the debtors sold the Property and received a "wrap" note secured by a deed to secure debt. The new purchaser defaulted in January of 1985, and the debtors attempted to foreclose but were stayed by two Chapter 11 petitions filed by the purchaser. Ultimately, the automatic stay was lifted in those cases, and the debtors foreclosed on the Property in August of 1986. Julius Iteld and Paul Klein had not received any payments on the Note at issue here since August of 1985. On July 17, 1986, counsel for Messrs. Iteld and Klein notified the debtors by letter of their defaults and advised the debtors of their right to cure the defaults.

On August 6, 1986, counsel for Messrs. Iteld and Klein wrote the debtors notifying them that the debt had been accelerated and that they had the right under O.C.G.A. § 13–1–11 to pay all principal and interest within ten days of the receipt of the letter to avoid incurring attorney's fees. On August 29, 1986, more than ten days after the receipt of that letter, the debtors filed Chapter 11 petitions in the United States Bankruptcy Court in Los Angeles, California. In December of 1986, the cases were transferred to the United States Bankruptcy Court for the Northern District of Georgia.

On May 26, 1987, the debtors gave notice of a proposed sale of the Property pursuant to 11 U.S.C. § 363 and Bankruptcy Rules 6004 and 6006. The debtors proposed to sell the Property to an unrelated entity called Centre Court, Ltd., for $1,200,000.00 on June 15, 1987. On June 4, 1987, Iteld and Klein filed a motion for relief from the automatic stay. Following a hearing on that motion, the Court entered an order on July 1, 1987 denying the motion for relief from the automatic stay, advising Iteld and Klein that they could renew that motion and ordering the debtors to make all mortgage payments to Iteld and Klein on a current and ongoing basis.

On July 27, 1987, the debtors filed a joint disclosure statement and a joint plan of reorganization. The plan classified the secured claim by Messrs. Iteld and Klein as a Class III claim and provided the following treatment for that claim:

3.03 *Class III Claims*—The claims of Class III creditors shall be paid, settled and satisfied as follows:

Debtors shall cure any default under the terms of the promissory note and deed to secure debt by payment of the entire arrearage due through the Effective Date on or before Effective Date, thereby reinstating the maturity of the Class III claim as such maturity existed prior to default. The Class III claimants shall be entitled to compensation for the damages incurred as a result of any reasonable reliance by the holders of the Class III claims under any contractual provision entitling the holders thereof to demand or receive accelerated payment of their claims and, after notice and hearing, and entry of a non-appealable order of the Bankruptcy Court, the holders of the Class III claim shall be entitled to their reasonable attorneys' fees under Code Section 506(b). This provision is intended to be consistent with the statutory scheme contemplated by 11 U.S.C. § 1124(2).

In the portion of the plan describing the means for implementation of the plan, the debtors state that their primary source for funding the plan would be operating revenue and the proceeds of a sale or refinancing of the Property. In Article VI of the plan entitled "Effect of Confirmation", the plan states that "[b]y virtue of the reinstatement of their mortgage provided for herein, the Class III claimants shall not be permitted to declare a default and accelerate the unpaid balance under their promissory note and deed to secure debt due to any pre-Confirmation default".

In the disclosure statement, the debtors state that the plan provides that the debtors will pay all pre-confirmation arrearages to the Class III claimants on or before the Effective Date, thus curing any default under the terms of the Note and security deed and reinstating the maturity of the obligation. The disclosure statement further states that "[t]hereafter, regular monthly payments will be made under the provisions of the promissory note and security deed. It is anticipated that a sale of the property will be consummated soon after reinstatement of the Class III Claimants' mortgage. Class III is not impaired".

The disclosure statement states that the debtors intended to sell or refinance the Property and that they believe that a sale or refinancing will take place within 60 days of confirmation. The disclosure statement also states that acquisition and refinance loan commitments were recently obtained, that there was an existing contract which may close following confirmation, and that in the unlikely event that the Property could not be sold or refinanced, funds would be made available to meet all of the debtors' obligations under the plan.

On September 3, 1987, the Court held a hearing on the debtors' disclosure statement and approved it over the objections of Messrs. Iteld and Klein.

On September 21, 1987, the Honorable A. David Kahn held a hearing on the confirmation of the debtors' plan. The debtors announced that they planned to sell the Property on September 25, 1987; that they planned to pay all arrearages to Iteld and Klein and all unpaid taxes the day before the sale in order to bring the debt current; and that they planned to pay the entire outstanding balance to Iteld and Klein at

the closing. The debtors announced that they were in a position to cure and reinstate the debt prior to closing. Iteld and Klein objected to the confirmation of the debtors' plan since it failed to provide for the payment of statutory attorneys's fees under O.C.G.A. § 13–1–11 which they claimed to be approximately $84,000.00.

At the hearing, the Court encouraged the parties to sell the Property promptly and to submit briefs on the issues regarding attorney's fees. The Court deferred ruling on the confirmation of the plan pending the submission of briefs, without prejudice to anyone's rights, and the Court directed the debtor to reinstate the debt of Iteld and Klein prior to closing to preserve the debtors' position.[1]

On September 21, 1987, the Court entered an Order authorizing the debtors to sell the Property to Centre Court, Ltd. pursuant to the contract dated May 15, 1987 as promptly as possible. The Court recognized in its Order that no objections had been filed to the notice of the proposed sale and that the original closing date referred to in the notice had been extended.

On September 23, 1987, the debtors sent a certified check to counsel for Messrs. Iteld and Klein in the amount of $145,-708.75 and paid some $35,783.17 in property taxes. At the same time, the debtors deposited $86,751.94 in the Registry of the Bankruptcy Court, representing funds sufficient to satisfy Iteld's and Klein's claim for attorney's fees and other disputed amounts. Those funds were deposited in an interest bearing account. On September 25, 1987, the debtors sold the Property and Iteld and Klein were paid $690,605.83 which was the full amount of the outstanding principal and interest under the Note.

## II. *The Nature of the Attorney's Fee Claim Under O.C.G.A. § 13–1–11*

Under Georgia law, statutory attorneys fees are governed by Official Code of Georgia Annotated § 13–1–11,[2] which states as follows:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

(1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;

(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;

(3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no

---

**1.** In February of 1988, these cases were transferred from the Honorable A. David Kahn, Chief Judge, United States Bankruptcy Court, Northern District of Georgia, to the undersigned.

**2.** The immediate predecessor was Ga. Code Ann. § 20–506 (Harrison 1977).

court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

(b) Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to this Code section where applicable.

O.C.G.A. § 13-1-11.

In the case at bar, Iteld and Klein claim some $84,000.00 pursuant to this provision. There has been no showing nor is there any contention that this number bears any relationship to the actual attorney's fees expended in the collection of the debt. The Georgia courts have long recognized that a claim under this section is not a claim by an attorney, and a claim when enforced does not go to pay an attorney. It is simply added to the debt claimed by the holder of the note and is more in the nature of a liquidated damages provision. *Guarantee Trust and Banking Company v. American National Bank*, 15 Ga.App. 778, 84 S.E. 222 (1914); *Royal v. Edinburgh—American Land Mortgage Company, Ltd.*, 143 Ga. 347, 85 S.E. 190 (1915); *Bank of Lumpkin v. Farmers State Bank*, 35 Ga.App. 340, 133 S.E. 307 (1926); and *Spence v. Phillips*, 172 Ga. 782, 158 S.E. 797 (1931).

It is useful to this analysis to look at the history of this statute and its predecessor statutes. The Georgia Court of Appeals set forth an excellent discussion of the history of this statute in the case of *General Electric Credit Corp. v. Brooks*, 242 Ga. 109, 249 S.E.2d 596 (1978). The statute in its original form was a reaction to the common law whereby attorney's fees provisions in instruments of indebtedness were valid as were any other stipulations in such an instrument. The original statute was passed in 1891 and declared all contractual provisions for the collection of attorney's fees in notes void unless the debtor actually litigated the claim and lost. The statute was intended to subject a debtor to a penalty for failure to pay his indebtedness when he litigated with the creditor and unsuccessfully resisted the suit and to eliminate the penalty when the debtor "honestly could not pay and made no resistance to the creditor's suit." *Id.* at 113, 249 S.E.2d 596. While the current version of the statute varies significantly from the original legislation, two points should be noted. First, even the current version is "intended to require the creditor to give the debtor an opportunity to meet his obligation without incurring additional expenses in the nature of attorney fees." *Id.* at 114, 249 S.E.2d 596. Second, a debtor who files a Chapter 11 is more like the debtor who "honestly could not pay" than the debtor who unsuccessfully defends a defenseless lawsuit.

The federal courts have recognized that percentage fee assessments under O.C.G. A. § 13-1-11 are grossly disproportionate to the amount of fees actually incurred and that they in fact provide a windfall to the creditor, at the expense of the other creditors or the equity interest holders. *United States v. Allen*, 699 F.2d 1117, 1123 (11th Cir.1983); *Security National Bank v. Cotton (In re Atlanta International Raceway, Inc.)*, 513 F.2d 546, 549 (5th Cir.1975); *Burns v. Home Federal Savings and Loan Association (In re Burns)*, 16 B.R. 757, 761 (Bankr.M.D.Ga.1982); *Specialty Investment Corp. v. Village Apartment Associates (In re Village Apartment Associates)*, 9 B.R. 211 (Bankr.N.D.Ga.1981).

III. *The Effect of Federal Bankruptcy Law on a Claim for Georgia Statutory Attorney's Fees*

While the validity of a claim for Georgia statutory attorney's fees is a question of Georgia law, the enforceability of Iteld and Klein's claim for attorney's fees in this Chapter 11 proceeding is a question of federal bankruptcy law. *See Security Mortgage Company v. Powers*, 278 U.S. 149, 154, 49 S.Ct. 84, 85, 73 L.Ed. 236 (1928); *Security National Bank v. Cotton (In re Atlanta International Raceway, Inc.)*, 513 F.2d 546, 548-549 (5th Cir.1975).

The Constitution of the United States empowered Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. I, § 8, cl. 4. Laws enacted by Congress pursuant to this grant of authori-

ty are supreme to those of the states. *Id.,* at art. VI, cl. 2. Bankruptcy provisions allowing the opportunity to cure and reinstate accelerated debts and bankruptcy provisions governing the payment of secured creditors' attorney's fees are no exception to the Supremacy Clause.

### A. The Effect of Cure and Reinstatement under the Bankruptcy Code

Chapter 11 authorizes the cure of a default in § 1123(a)(5)(G). The Bankruptcy Code provision which specifically permits cure and reinstatement of a mortgage in a Chapter 11 case is 11 U.S.C. § 1124(2). Section 1124 as a whole defines when a class of claims or interests is impaired under a plan of reorganization. One of the exceptions to the concept of impairment is found in § 1124 which provides:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan ...
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
>
> > (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
> >
> > (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
> >
> > (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
> >
> > (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124.

Many courts have considered the purpose and effect of § 1124(2). In *In re Madison Hotel Associates,* 749 F.2d 410 (7th Cir. 1984) the Seventh Circuit recognized that the exceptions to impairment under § 1124, including § 1124(2), "are of vital importance in a Chapter 11 reorganization", *Id.* at 418; that curing a default under § 1124(2) does not impair a creditor's claim although it inevitably changes a contractual acceleration clause, and that § 1124(2) permits the plan to reverse a contractual or legal acceleration, *Id.* at 419. The purpose of § 1124(2) is to "effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred." *Levy v. Forest Hills Associates (In re Forest Hills Associates),* 40 B.R. 410, 415 (Bankr.S.D.N.Y.1984).

"Section 1124(2) allows the debtor to return the accelerated claim to its original maturity date and recreate the pre-default setting for all purposes under the contract." *In re Manville Forest Products Corporation,* 43 B.R. 293, 298–299 (Bankr. S.D.N.Y.1984), *aff'd. in part, rev'd. in part on other grounds,* 60 B.R. 403 (S.D. N.Y.1986). A cure and reinstatement under § 1124(2) is deemed to return the parties to their status at a point in time prior to the acceleration. Section 1124(2) has been used to reverse the effect of an order of foreclosure under Wisconsin law, *In re Madison Hotel Associates,* 749 F.2d at 410; to reverse the acceleration caused by default where the claim based on contractual acceleration has been reduced to a judgment in a State Court before the filing of the Chapter 11 petition, *Ketchikan Lodge v. Hewitt (In re Hewitt),* 16 B.R. 973, 977 (Bankr.D. Alaska 1982); to permit cure and reinstatement of the claim as it existed before default even if the current market rate of interest is higher than the contract rate, *In re Victory Construction Company, Inc.,* 42 B.R. 145, 153 (Bankr.C.D.Cal. 1984); to prevent a creditor from claiming interest on the accelerated debt from default until time of payment, *In re Manville Forest Products Corporation,* 43 B.R. 293, 298–299 (Bankr.S.D.N.Y.1984); and to prevent a creditor from claiming that the debtor must pay a higher post-maturity interest

rate provided for in a mortgage to cover post-maturity arrearages and defaults, when the plan provides for cure and reinstatement at the pre-maturity rate, *Levy v. Forest Hills Associates*, 40 B.R. at 413.

Bankruptcy courts in Georgia have considered the effect of cure and reinstatement on creditors' claims under O.C.G.A. § 13–1–11 and have held that the creditors were not entitled to the Georgia statutory attorney's fees claim. *In re Davis*, 77 B.R. 313 (Bankr.M.D.Ga.1987), *aff'd.,* — B.R. ——, No. 87–64–Thom (M.D.Ga. Jan. 29, 1988); *Midland Mutual Life Insurance Co. v. Masnorth Corp. (In re Masnorth Corp.),* 28 B.R. 892 (Bankr.N.D.Ga.1983) (hereinafter referred to as *"Masnorth I"*); *Midland Mutual Life Insurance Co. v. Masnorth Corp. (In re Masnorth Corp.),* 36 B.R. 335 (Bankr.N.D.Ga.1984) (hereinafter referred to as *"Masnorth II"*).

In *Masnorth I*, Judge W. Homer Drake considered the effects of 11 U.S.C. § 1124 on a creditor's claim for Georgia statutory attorney's fees and concluded that statutory attorney's fees as contemplated by O.C.G.A. § 13–1–11 do not become a lien against secured property where a default on an underlying obligation is cured and reinstated pursuant to the provisions of the Bankruptcy Code. In that case, the debtor was two payments behind when the petition was filed, the debtor made no payments to the creditor during the proceeding, and the plan proposed to pay the creditor all arrearages, past due taxes and administrative claims. The creditor objected to confirmation and contended that the debtor should not be allowed to cure the mortgage default without providing for the payment of Georgia statutory attorney's fees of 15% on the current outstanding balance of principal and interest. In discussing § 1124 of the Bankruptcy Code, the Court stated:

> The cure and reinstatement of a mortgage that is in default necessarily alters a party's legal, equitable, and contractual rights under a contract. However, the cure of default and reinstatement of a mortgage is clearly contemplated by § 1124 of the Bankruptcy Code and is in furtherance of the Congressional purpose of allowing debtors to reorganize. *Masnorth I*, 28 B.R. at 894.

The Court in *Masnorth I* relied on the case of *Di Pierro v. Taddeo (In re Taddeo),* 685 F.2d 24 (2nd Cir.1982) and stated as follows:

> The language which the Second Circuit Court of Appeals employed in *Taddeo* establishes that a cure of default and reinstatement of a mortgage is deemed to return the parties to a point prior to any default. If there has been no default, there can be no acceleration, and therefore no request for attorney's fees arising out of that default and acceleration. This Court concludes that statutory attorney's fees, as contemplated by Official Code of Georgia § 13–1–11 do not become a lien against secured property where a default on an underlying obligation is cured and reinstated pursuant to the provisions of the Bankruptcy Code. This determination is consistent with both the rehabilitative purposes of Chapter 11 and Chapter 13 of the Bankruptcy Code.

*Masnorth I*, 28 B.R. at 896.

The Court in *Masnorth I* distinguished the case of *Mills v. East Side Investors (In re East Side Investors),* 694 F.2d 242 (11th Cir.1982), *reh'g denied*, 702 F.2d 214 (11th Cir.1983) in which the Eleventh Circuit affirmed the holding that Georgia statutory attorney's fees could be enforced as a part of the debtor's principal obligation. In *East Side Investors*, the Eleventh Circuit concluded that the meaning of "collected by or through an attorney at law" as used in the Georgia statute was not changed by the fact that a creditor collected its debt through a bankruptcy proceeding as opposed to a state nonjudicial foreclosure. In that case, the creditor collected its debt through a consent decree entered after the commencement of the bankruptcy proceedings, and the consent order provided for payment to the creditor of the full amount of "principal due under the notes as well as for interest accrued and accruing". *Mills v. East Side Investors*, 694 F.2d at 244. The Court in *Masnorth I* stated that:

[t]he key factor which distinguishes this case from *East Side Investors* is the fact that the debtor herein is seeking to cure and reinstate its mortgage, whereas in *East Side Investors* the debtor entered into a consent order which provided for the payment of principal and interest to the secured creditor therein.

*Masnorth I*, 28 B.R. at 896.

Iteld and Klein argue that *East Side Investors* requires this Court to hold that the attorney's fee claim in this case which vested under Georgia law prior to the debtor's filing of the Chapter 11 cases cannot be reversed or divested by § 1124. The Court disagrees. First, *East Side Investors* involved a Chapter 12 case under the old Bankruptcy Act and there was no issue of cure and reinstatement. The present cases were filed under Chapter 11 of the Bankruptcy Code and involve a plan proposing cure and reinstatement to be followed by a sale or refinancing of the property.[3] Second, the Eleventh Circuit made it clear in a decision denying the petition for rehearing in *East Side Investors* that it did not intend to say that statutory attorney's fees must be allowed in all cases. *Mills v. East Side Investors*, 702 F.2d at 215. In that decision, the Court said "[i]f our holding is perceived to be that collection of a note containing Georgia's statutory attorney fee provision in a bankruptcy proceeding automatically authorizes attorney fees, we wish to correct that impression. Perhaps we were guilty of saying too much". *Id.* at 215. Third, the Court in *East Side Investors* was not considering the effect of any law akin to § 506(b) of the Bankruptcy

Code which governs the payment of attorney's fees to the oversecured creditor.

In *In re Davis*, 77 B.R. 313 (Bankr.M.D. Ga.1987), *aff'd.*, —— B.R. ——, 87–64– Thom. (M.D.Ga. Jan. 29, 1988), Judge John T. Laney, III held that a cure of default in a confirmed Chapter 12 plan returned the parties to their pre-default position and thus, statutory attorney's fees under the Georgia statute did not become a lien against the secured property. Agreeing with Judge Drake in *Masnorth I* and *Masnorth II*, the *Davis* Court found that the provisions of Chapter 12 permitting a debtor to cure a default allowed the debtor to "deaccelerate" the mortgage. The Court held that while the debtor must compensate the creditor for any loss due to cure and reinstatement of a mortgage pursuant to 11 U.S.C. § 1222(b)(6) which in turn refers to 11 U.S.C. § 365, those attorney's fees and costs could only be reasonable amounts actually incurred before the filing of the petition. The Court held further that the creditor could collect reasonable attorney's fees and expenses incurred after the bankruptcy filing pursuant to 11 U.S.C. § 506(b). Thus, under the combined authority of § 365 and § 506(b), the creditor in *Davis* was allowed reasonable pre-petition and post-petition attorney's fees.[4]

The case at bar presents a factual situation somewhat different from both *Masnorth I* and *East Side Investors*. Here, the debtors proposed a plan to cure and reinstate the debt and in fact did cure and reinstate the debt, but then paid the debt in full the day after cure and reinstatement

---

**3.** Both the debtors and Iteld and Klein argue that the legislative history of § 1124 supports their respective positions. The Court does not find the legislative history to be particularly helpful. The House Report states that § 1124 is "new", H.R.Rep. No. 595, 95th Cong., 2d Sess. 408 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6364, while the Senate Report states that "the basic concept underlying § 1124 is not new", S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5906. The Senate Report states that the concept rests essentially on § 107 of Chapter X (11 U.S.C. § 507) which provided that creditors or stockholders or any class thereof "shall be deemed to be 'affected' by a plan only if their or its interest shall be materially and adversely

affected thereby". S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin. News 1978, p. 5906. If § 1124 was intended to be a departure from prior law as suggested by the House Report, *East Side Investors* should not dictate the result here, since it was a pre-Code case. If § 1124 is not new, *East Side Investors* still does not suggest the result here, since the Court there was not considering any confirmation issues under Chapter X of the old Bankruptcy Act, as the case involved a consent decree in a Chapter XII case.

**4.** In *Davis*, the actual attorney's fees totalled $530.50 as opposed to $2,503.00 claimed under the Georgia attorney's fees statute.

pursuant to a Court-approved sale of the property. The debtors argue that the facts are closer to *Masnorth I,* and Iteld and Klein argue that they were really being "cashed out" like the creditors in *East Side Investors.* Iteld and Klein argue that the debtors' proposal to cure and reinstate the debt immediately prior to a complete payoff was done simply to avoid having to pay 15% attorney's fees and that a Chapter 11 debtor who intends to sell its property is precluded from taking advantage of the provisions of § 1124(2). However, there is nothing in the language of § 1124(2) to suggest that it is unavailable to a debtor who also intends to sell its property following cure and reinstatement. The provisions of Chapter 11 specifically provide for liquidation plans (11 U.S.C. § 1123(b)(4)) and for the curing and waiving of any default (11 U.S.C. § 1123(a)(5)(G)). Looking at the statute as a whole, it would appear that a debtor should be permitted to cure and reinstate a debt and then liquidate the claim in order to avoid a windfall to the creditor. As the Supreme Court recently stated in the case of *United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* — U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), statutory construction is a "holistic endeavor" and a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. Here, the statutory scheme of Chapter 11 contemplates both reorganization and liquidation plans, and there was nothing improper in the sale of the Property, which was authorized by the Court and not objected to by Iteld and Klein. Furthermore, it is significant that in the disclosure statement and at the confirmation hearing, the debtors stated that they had the funds to cure and reinstate the debt and intended to do so without regard to whether the sale actually took place.

The result here might be different if the debtor had proposed a plan to sell the property without a cure and reinstatement, since requiring the creditor to wait until a sale was consummated might have resulted in an impairment under § 1124. *See In re Otero Mills, Inc.,* 31 B.R. 185 (Bankr.D.N.

M.1983). However, this is not what was proposed in this case. The debtors proposed a plan to cure and reinstate the mortgage before the property was sold and in fact did so. Iteld and Klein seem to agree that if the sale had occurred some months after cure and reinstatement, then the debtor would be able to take advantage of § 1124(2). However, there does not seem to be any statutory basis or any good policy reason for holding that debtors cannot propose a plan of cure and reinstatement in order to reverse the effects of acceleration simply because they plan to sell the property earlier rather than later.

In conclusion, the Court finds that the proposed plan cures any default and that the debtors' payment to Iteld and Klein on September 23, 1987 of $145,708.75 and the payment of property taxes on that date cured any defaults at issue. The cure and reinstatement returned the parties to a point in time prior to the default and acceleration and removed any claim for Georgia statutory attorney's fees on the accelerated debt.

B.  The Effect of 11 U.S.C. § 506(b) on the Claim for Georgia Statutory Attorney's Fees

Section 506(b) of the Bankruptcy Code provides as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (emphasis added).

Both the Fifth and the Ninth Circuits have held that § 506(b) preempts state law permitting attorney's fees. *Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.),* 794 F.2d 1051 (5th Cir.1986); *Joseph F. Sanson Investment Co. v. 268 Limited (In re 268 Limited),* 789 F.2d 674 (9th Cir.1986). *See*

also *First Federal Savings & Loan Association of Warner Robins v. Standard Building Associates, Ltd. (In re Standard Building Associates, Ltd.)*, 85 B.R. 644 (Bankr.N.D.Ga.1988); *In re Hart*, 80 B.R. 107 (Bankr.E.D.Tenn.1987); *Bank of Ruleville v. Chudy (In re Chudy)*, 62 B.R. 105 (Bankr.N.D.Miss.1986).

In *Hudson Shipbuilders*, the Court was asked to determine the amount of attorney's fees to which the senior secured creditor was entitled in connection with a promissory note providing for the addition of 15% to remaining unpaid principal as attorney's fees in the event of default. The issue arose in the context of an effort by the junior secured creditor to acquire the first mortgage. The senior secured creditor insisted it was entitled to a full 15% of the remaining unpaid balance as set forth in the note, but the junior secured creditor argued that only fees for services actually provided could legitimately be added to the claim.

The bankruptcy court held that federal law controlled the proper amount of attorney's fees to be permitted in connection with a secured claim under 11 U.S.C. § 506(b). The district court affirmed the bankruptcy court, and the Fifth Circuit affirmed the judgment of the district court.

In considering whether to apply the substantive law of Mississippi or federal law, the Fifth Circuit in *Hudson Shipbuilders* agreed with decisions of the Fourth and Ninth Circuits in *Unsecured Creditors' Committee v. Walter E. Heller and Company Southeast, Inc. (In re K.H. Stephenson Supply Co.)*, 768 F.2d 580 (4th Cir. 1985) and *Joseph F. Sanson Investment Co. v. 268 Limited (In re 268 Limited)*, 789 F.2d 674 (9th Cir.1986) and held that federal law applies. The Court referred to the exhaustive analysis of the legislative history of 11 U.S.C. § 506(b) set forth in *Heller* and concluded that Congress intended that federal law should govern the enforceability of attorney's fees provisions in bankruptcy. The Court reviewed numerous cases which held that "federal law should be the measure of 'reasonableness' called

for by 11 U.S.C. § 506(b)", and determined that the weight of judicial precedent and the legislative intent indicate that fee awards are to be made under § 506(b) regardless of state law. *Hudson Shipbuilders*, 794 F.2d at 1057.

In *268 Limited*, the apartment complex of the Chapter 11 debtor was sold, and the secured creditor applied for 5% of the outstanding debt as called for in the deed of trust. The amount sought in attorney's fees pursuant to this provision was $197,500.00, and the Court awarded $20,000.00. While the funds were available to pay the full amount claimed, the bankruptcy court limited the fees to the amount it deemed reasonable under the circumstances.

The Ninth Circuit held that § 506(b) preempts the state law governing the availability of attorney's fees as part of a secured claim and that the bankruptcy court correctly engaged in an independent reasonableness inquiry. The Court rejected the creditor's argument that the fact that a contractual fee provision would be enforceable under Nevada law means that it would be reasonable per se under § 506(b) as "linguistically untenable" and stated that:

Reasonableness and enforceability are not, however, co-terminous. A concededly unreasonable fee provision might be enforceable under state law, whereas a reasonable one might be unenforceable for reasons unrelated to the size of the fee. Thus, we cannot agree that by requiring that contractual fee agreements be reasonable Congress meant only that they must be enforceable under the law governing the enforcement of the contract. To give § 506(b)'s limitation meaning, we must read it to provide for an *ex post* reasonableness determination by the bankruptcy court.

*268 Limited*, 789 F.2d at 675–676.

■ The Court agrees with the reasoning of *Hudson Shipbuilders* and *268 Limited* and finds that any attorney's fees awarded to Iteld and Klein must be done so pursuant to § 506(b) and § 1124(2)(C). Here, the debtors' plan provided for the payment to Iteld and Klein for any damages incurred as permitted under

§ 1124(2)(C) (damages incurred as a result of reasonable reliance on a contractual provision allowing acceleration) and reasonable attorney's fees under § 506(b). Iteld and Klein are free to apply for and obtain attorney's fees pursuant to those provisions, and the amount of those fees will be subject to a reasonableness standard. *See Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).

#### IV. *General Policy Considerations*

It would be ludicrous to deny confirmation of a Chapter 11 plan which pays all creditors in full and which pays the secured creditor any actual and reasonable attorney's fees permitted under the Bankruptcy Code, simply because the plan does not propose to pay a secured creditor a windfall amount of attorney's fees which bears no relationship to the actual work performed. The bankruptcy court is a court of equity, and there is no justification for penalizing the unsecured creditors or the debtors and awarding a windfall to Iteld and Klein. It is difficult to see how Iteld and Klein have been harmed when they have received all interest, principal and late charges and when the plan permits them to apply for and receive all reasonable and actual attorney's fees in accordance with § 506(b) and § 1124(2)(C). To deny confirmation of this plan and to inflict an added expense on the debtor would be contrary to the purposes and policies of Chapter 11.

Finally, the result here is not inconsistent with the original purpose of the Georgia statute governing attorney's fees. A debtor who files a Chapter 11 petition and then proposes a means for curing all defaults and paying the creditor in full is not the sort of debtor who "refuses" to pay and upon whom a penalty should be imposed.

Accordingly, the Court finds that the plan proposed by the debtors should be confirmed and that Iteld and Klein's claim

is "not impaired" within the meaning of § 1124. Iteld and Klein are free to apply for and obtain the reasonable and actual value of their attorney's fees consistent with the provisions of 11 U.S.C. § 506(b) and 11 U.S.C. § 1124(2)(C).

An order of confirmation will be entered consistent with this opinion.