[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 29, 2001**
**THOMAS K. KAHN**
**CLERK**

_____

No. 99-14875

_____

D.C. Docket No. 99-00142-CV-4

DANIEL A. WELZEL,

Debtor.

--------------------------------------------------------------------------------------------

DANIEL A. WELZEL,

Plaintiff-Appellee,

versus

ADVOCATE REALTY INVESTMENTS, LLC,

Defendant-Appellant,

_____

No. 99-14876

_____
D.C. Docket No. 99-00145-CV-4

DANIEL A. WELZEL,

Debtor.

--------------------------------------------------------------------------------------------

ADVOCATE REALTY INVESTMENTS, LLC,

Plaintiff-Appellant,

KENNETH L. ROYAL,

Plaintiff,

versus

DANIEL A. WELZEL,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(June 29, 2001)**

Before WILSON, COX and GIBSON[*], Circuit Judges.

GIBSON, Circuit Judge:

The prior opinion in this case is hereby VACATED and the opinion set forth

below is substituted in its place.

The issue in this case is whether the Bankruptcy Code preempts a Georgia

statute authorizing a creditor to collect a fifteen-percent attorney's fee upon default

and with proper notice. The debtor Daniel A. Welzel, Jr. objected to that portion

_____

[*]   Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by
designation.

of Advocate Realty Investments, LLC's claim which represents the statutory attorney'sfees. The bankruptcy court sustained the objection in part and overruled it in part. The district court reversed and held that the Georgia statute is preempted. We affirm the judgment of the district court.

Welzel borrowed more than $1 million from the Darby Bank and Trust Company secured by mortgages on real estate in the historic district of Savannah, Georgia. Advocate purchased the notes from the bank shortly after the bank had given written notice to Welzel that the indebtedness was in default and immediately due and payable, and that in accordance with Ga. Code Ann. § 13-1-11 (1982) the bank would enforce certain provisions of the notes such that Welzel had ten days in which to pay the principal and interest to avoid incurring liability for attorney's fees. The parties stipulated that Welzel failed to pay within the ten-day period. Welzel filed for relief under Chapter 11 of the Bankruptcy Code after the ten-day grace period expired, and the case was later converted to a Chapter 7 liquidation.

Welzel stipulated that Advocate's right to fifteen percent of the indebtedness for attorney's fees vested as a matter of state law upon his failure to satisfy the debt within ten days of the written notice. Advocate filed a secured claim in the amount

of $1,125,464.47, which included $146,799.71 in statutory attorney's fees.[1] The bankruptcy court noted in its order that an estimate of the attorney's fees Advocate had actually incurred at the time of the hearing was $40,000. Welzel objects to the allowance of any attorney's fees beyond those actually incurred and determined to be reasonable.

## I.

The parties contest only the conclusions of law reached by the bankruptcy court and the district court, and therefore our review is de novo. Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1282 (11th Cir. 1998). We address an issue not yet decided in this circuit, namely whether the amount of attorney's fees an oversecured creditor may recover is determined under state law or under the "reasonable amount" standard contained in section 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b) (1994). We conclude that the latter controls by virtue of preemption.

Under section 506(b), a holder of a secured claim is entitled to reasonable attorney's fees if the creditor is oversecured[2] and the underlying agreement upon

---

[1]   The bankruptcy court found that Advocate's total claim, after the application of proceeds for previously court-approved sales of property, was $748,724.79. Even though the amount of its claim diminished, Advocate continues to claim $146,799.71 (fifteen percent of $978,664.76) as attorney's fees.

[2]   An oversecured creditor is one whose claim is secured by property whose value exceeds the principal amount of the claim.

4

which the claim is based provides for the fees. Welzel acknowledges that Advocate's claim is an allowed secured claim, that Advocate is oversecured, and that the notes which form the basis of its claim provide for attorney's fees upon collection. Welzel claims that the attorney's fees must be "reasonable" under section 506(b); Advocate argues that it is entitled to collect the fifteen percent set forth in the notes because its right to that amount vested under Georgia law.

Advocate relies on Ga. Code Ann. § 13-1-11, which governs the procedure for validating and enforcing an attorney's fee provision in a note. Under the Georgia statute, if the creditor gives written notice of default and the debtor does not cure the default within ten days of receipt of the notice, the contractual obligation is valid and enforceable. Here, Advocate's predecessor adhered to this procedure and Welzel failed to cure the default within the notice period. After the notice period passed, Welzel sought protection under the bankruptcy laws. Advocate asserts that the timing of events renders the fifteen-percent charge for attorney's fees enforceable as part of Welzel's principal obligation because its right to collect those fees vested pre-petition, relying on Mills v. East Side Investors (In re East Side Investors), 694 F.2d 242, 246 (11th Cir. 1982). Although it is correct that East Side Investors held that attorney's fees were enforceable as a part of the debtor's principal obligation, the case was decided as the law was applied before

the enactment of the Bankruptcy Reform Act of 1978 (of which section 506(b) was a part). Because there has been a change in the applicable statute, we are no longer bound by East Side Investors.

Four circuits have addressed this issue since the adoption of the 1978 Act, and all have determined that the award of attorney's fees is governed by section 506(b) rather than by state law. First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200 (8th Cir. 1997); Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674 (9th Cir. 1986); Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.), 794 F.2d 1051 (5th Cir. 1986); Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast, Inc. (In re K. H. Stephenson Supply Co.), 768 F.2d 580 (4th Cir. 1985). Some of these cases include a thorough recitation of the legislative history insofar as it relates to Congress's intent that state law should no longer govern the enforceability of attorney's fee agreements. See, e.g., In re 268 Ltd., 789 F.2d at 676-77; In re K. H. Stephenson Supply Co., 768 F.2d at 582-85. Two circuits have applied preemption to allow fees to be awarded where state law would have denied recovery. In Schriock, the Eighth Circuit held that an attorney's fees provision in a contract was enforceable under section 506(b) even though it was invalid under state law. 104 F.3d at 202-03. In K.H. Stephenson, the Fourth Circuit held that an oversecured

6

creditor should be awarded its reasonable attorney's fees in spite of its failure to comply with the provisions of state law.  768 F.2d at 585.

We agree with the analyses and uniform conclusions of these courts,[3] and we hold that Advocate is entitled to its reasonable attorney's fees under section 506(b) and not the fifteen-percent fee that Georgia law would provide.  We therefore affirm the district court's judgment.

## II.

The district court rejected the bankruptcy court's bifurcation of Advocate's claim as it relates to attorney's fees.  The bankruptcy court allowed the claim and determined that the reasonable fees actually incurred by Advocate would be treated as a secured claim, and the balance of the fifteen percent would be treated as a general unsecured claim for the purposes of distribution.  Although there is less unanimity among the courts on this issue, we hold that Advocate is entitled to recover in full its reasonable attorney's fees as a secured claim but that any additional amount is not recoverable in a bankruptcy proceeding.  "The federal

---

[3]    A number of bankruptcy courts have reached the same conclusion. See, e.g., In re McGaw Prop. Mgmt., Inc., 133 B.R. 227, 229-30 (Bankr. C.D. Cal. 1991); In re Smith, 109 B.R. 421, 422-23 (Bankr. D. Mont. 1988); In re Wonder Corp., 72 B.R. 580, 586-88 (Bankr. D. Conn. 1987); In re B & W Mgmt., Inc., 63 B.R. 395, 401 (Bankr. D.C. 1986).  Two bankruptcy courts have also determined that section 506(b) specifically trumps Ga. Code Ann. § 13-1-11, the state statute at issue in this case.  In re Centre Court Apts., Ltd., 85 B.R. 651, 659-61 (Bankr. N.D. Ga. 1988); Curtis v. Pilgrim Health and Life Ins. Co. (In re Curtis), 83 B.R. 853, 858-61 (Bankr. S.D. Ga. 1988).

courts have recognized that percentage fee assessments under [Ga. Code Ann.] § 13-1-11 are grossly disproportionate to the amount of fees actually incurred and that they in fact provide a windfall to the creditor. . . ." In re Centre Court Apts., Ltd., 85 B.R. 651, 655 (Bankr. N.D. Ga. 1988) (collecting cases). Moreover, as Advocate argued to the district court and continues to argue here, there is no statutory authority for bifurcation. Advocate has argued consistently before the bankruptcy court, the district court, and this court that it should receive its entire claim for attorney's fees as a secured claim. In its response to Welzel's objection in the bankruptcy court, Advocate argued that its claim was secured because the fees arose and were perfected pre-petition, but in the alternative:

> 11 U.S.C. § 506 does not preclude the recovery of statutory attorneys' fees as an unsecured claim. However, since Advocate's security deeds in this case contain dragnet clauses, any unsecured claim of Advocate, including that for attorneys' fees, would still be secured pursuant to its security deeds. Therefore, Advocate is entitled to recover all of its statutory attorneys' fees as a secured claim in this case.

Advocate appealed the bankruptcy court's decision and argued before the district court that the bankruptcy court "erroneously held that the attorney's fees portion of Advocate's claim should be bifurcated." Advocate then discussed the relationship between sections 502 and 506 and concluded that bifurcating a vested claim for attorney's fees into a secured (reasonable) claim and an unsecured (unreasonable) claim "is at variance with the provisions of 11 U.S.C. § 502(b)."

8

Advocate asked the district court to reverse the bankruptcy court and allow its entire claim as a secured claim.

In its brief before this court, Advocate reiterated its argument that there is no basis to bifurcate its claim for attorney's fees into secured and unsecured portions. It argued in the alternative that section 506(b) does not preclude recovery of statutory attorney's fees as an unsecured claim, and under the statute it should be allowed reasonable attorney's fees as part of the secured claim. However, Advocate concluded its brief by asking that its claim be treated in its entirety as a secured claim. During oral argument, counsel for Advocate repeated the position that there is no statutory basis for bifurcating the claim into secured and unsecured portions, and he further opined that such a holding would make bad law.

Because the bankruptcy court is a court of equity, Advocate makes much of the notion that its right to collect the fifteen-percent attorney's fees vested before Welzel filed his bankruptcy petition. We recognize how the Georgia statute operates, and we conclude that the word "vested" overstates the sequence of events. Advocate held several notes from Welzel, all of which contained the same boilerplate language about attorney's fees. The Georgia statute directs that such fee agreements are enforceable, valid, and collectible with the proper notice. The statute does not itself award fees–it only validates already-existing fee agreements.

Here, the fee-agreement portion of the notes also cautions that Advocate's ability to collect attorney's fees of fifteen percent is "subject to any limits under applicable law." Although Advocate asserted its rights under the fee agreement pre-petition, it did not file suit and no services were rendered until post-petition. Thus, because section 506(b) is an "applicable law" that limits recovery to reasonable fees, there is no compelling reason to bifurcate Advocate's claim for fees because it incurred fees only in connection with the bankruptcy.

## Conclusion

We AFFIRM the judgment of the district court, and we REMAND so that Advocate may petition the bankruptcy court for the allowance of reasonable attorney's fees as an oversecured creditor.

COX, Circuit Judge, concurring in part and dissenting in part:

Responding to Advocate Realty Investments' arguments, the majority reaches three conclusions. The first is that federal law trumps Georgia law by deeming the contractual attorney fee, which is enforceable under O.C.G.A. § 13-1-11, to be a severable part of Advocate's claim. The second is that federal law provides the standard of "reasonableness" under 11 U.S.C. § 506(b), without regard to the opinion of the Georgia legislature. Finally, it holds that § 506(b)'s allowance of "reasonable fees" to an oversecured creditor prohibits the creditor from ever collecting — even if the debtor is solvent — the "unreasonable" fees that a willing and sophisticated debtor agreed to pay in case of default. I agree with the first two holdings. But the third is inconsistent with the Bankruptcy Code.

For the first and second holdings, the majority is in good company: The Fourth, Fifth, Eighth, and Ninth Circuits have all held that federal law, not state law, dictates whether a contractual fee is awardable as part of a secured claim and how much is a "reasonable" fee. *See First W. Bank & Trust v. Drewes (In re Schriock)*, 104 F.3d 200, 203 (8th Cir. 1997) (§ 506(b) authorized award of fee notwithstanding contrary North Dakota law); *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1058 (5th Cir. 1986) (federal law determines reasonableness of fee); *Joseph F. Sansom*

11

*Investment Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674, 677 (9th Cir. 1986)

(federal law determines fee's reasonableness); *Unsecured Creditors' Comm. v.*

*Walker E. Heller & Co. S.E., Inc. (In re Walker E. Heller & Co. S.E., Inc.)*, 768

F.2d 580, 581 (4th Cir. 1985) (reasonable fee allowed to oversecured creditor

under agreement notwithstanding failure to comply with state-law notice

provision). And if you have decided that federal law controls, it follows that the

part of the claim called an attorney fee must be severed from the rest of the claim

and trimmed, as necessary, to meet a federal standard of reasonableness. *United*

*States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989)

(dictum).

Section 506(b) does not, however, explicitly disallow or avoid the

"unreasonable" part of the attorney-fee claim. *In re 268 Ltd.*, 789 F.2d at 678. It

powerfully implies, of course, that the "unreasonable" part of the fee may not be

collected from the collateral; such a rule is an obvious and necessary corollary to

the statute's explicit authorization to collect only a "reasonable fee" as part of the

secured claim. But § 506(b) is otherwise silent about what happens to the rest of

the fee.

Section 502, on the other hand, does have something to say about the rest of

the consensual "unreasonable" fee. That section provides that a claim, even if

objected to, "shall be allowed" unless some listed exception (such as one disallowing unenforceable claims, 11 U.S.C. § 502(b)(1), or another disallowing unreasonable fees charged by the *debtor's* lawyer, *id.* § 502(b)(4)) requires it to be disallowed. *Id.* § 502(b).  No exception appears to apply here, and indeed no one denies that Advocate's claim for the balance of the note and the attorney fees permitted under O.C.G.A. § 13-1-11 is an allowed claim.  No one has advanced, moreover, any reason for avoiding the fee agreement under any other Bankruptcy Code provision.  The estate is solvent, and Advocate should thus get the fee that Welzel agreed to pay, just as other unsecured creditors are getting paid.  *See In re Ridgewood Apts. of DeKalb County, Ltd.*, 174 B.R. 712, 719 (Bankr. S.D. Ohio 1994) ("[T]he claim for attorney fees must only be proper under state law [O.C.G.A. § 13-1-11, in that case] to become part of [the creditor's] allowed unsecured claim.").

Section 506(b)'s silence could not trump § 502(b)'s general instructions here, because § 506 addresses a distinct question: What kind of treatment does the allowed claim get, preferential or ordinary?  *See* 4 Collier on Bankruptcy ¶ 506.01, at 506-6 (Lawrence P. King, ed., 2d ed. 1999) ("[A]lthough section 506 applies a number of important rules specifying the determination of the secured status of a claim, the section does not govern the allowance or disallowance of the underlying

claim itself."). Claims that § 506(a) deems "secured" get favored treatment — they do not have to line up, for instance, with other claims in the order that § 507 directs; their recovery from the collateral is protected in many circumstances, *see* 11 U.S.C. §§ 361, 363(e), and ill treatment of secured claims can result in rejection of a plan under Chapters 11 or 13, *see id.* §§ 1129(b)(2)(A), 1325(a)(5). This favored treatment for secured claims comes at the expense of the estate, of course, and hence of unsecured creditors; § 506(b) therefore draws a line for special treatment of certain elements of a potentially secured claim, such as penalties and fees, making them available only when the claim is otherwise oversecured (and even then only when "reasonable").

This line between preferred and ordinary status is obviously not the same as the line that § 502 draws between allowed and disallowed claims. At best, then, what § 506(b) does is relegate the part of the fee claim that does not get secured status (that is, the "unreasonable" part of the fee) to the ordinary status of an unsecured claim. Incidentally, splitting a claim like this is not alien to the Code; it is what explicitly happens when a claim is undersecured. *See id.* § 506(a). On the contrary, reading § 506(b) to perform § 502's disallowing function, but only for secured creditors, turns bankruptcy law upside down by putting the *unsecured*

14

creditor seeking an "unreasonable" contractual fee — who gets the benefit of § 502 and does not get tangled up in § 506 —in a better position than a secured one.

There thus being no sound statutory basis to disallow or avoid the "unreasonable" part of a fee claim, equitable considerations alone would have to support the conclusion that "unreasonable" consensual fees are always disallowed — a view that at least one bankruptcy court in this circuit has adopted, and another has suggested. *In re Homestead Partners, Ltd.*, 200 B.R. 274, 277 n.3 (Bankr. N.D. Ga. 1996) (dictum); *In re Centre Court Apts.*, 85 B.R. 651, 661-62 (Bankr. N.D. Ga. 1988). But to let equity run the show ignores bankruptcy law's foundation in the Code.[1] Bankruptcy law is statutory, and when a statute affords relief — as § 502 does in allowing in full a claim for contractual fees — we should not deny that relief on equitable grounds. *Cf. Lonchar v. Thomas*, 517 U.S. 314, 323, 116 S. Ct. 1293, 1298 (1996) ("[T]he fact that the writ [of habeas corpus] has been called as 'equitable' remedy . . . does not authorize a court to ignore . . . statutes, rules, and precedents."). Congress has struck a balance in § 502 between respecting all creditors' contractual rights and protecting creditors from one another. That is not a balance that is ours to restrike.

---

[1] A Code that, incidentally, is not shy about *explicitly* conferring equitable discretion in certain circumstances. *See, e.g.*, 11 U.S.C. § 365(d)(10); *id.* § 502(j); *id.* § 524(g)(4)(B)(ii).

15

Replacing a rule with equitable discretion, moreover, leaves us with no bounds and no principles. *Cf. id.* Why is an unreasonable, but enforceable, fee agreement inequitable, and not an above-market interest rate? Why, indeed, should the court not protect unsecured creditors by determining whether the debtor paid too much for the assets he bought on credit? We can label all of these second-guesses "protection of other creditors," too, until we are in the business of detouring around all the limited statutory grounds (in §§ 502, 546, and 547, for instance) Congress has given the bankruptcy courts to erase abusive and unwise deals. It's best in the end for us to do as the bankruptcy court did in this case and stick to the Code.

I therefore respectfully dissent.