In re Leo ELY d/b/a Leo Ely Real Estate and Insurance, Gatlinburg Mini Ware-house, Arts and Crafts Distributors, E & H Contractors, Debtor.

Bankruptcy No. 3–81–00823.

United States Bankruptcy Court, E.D. Tennessee.

March 9, 1983.

---

Child, O'Connor & Petty, R.M. Child, Knoxville, Tenn., for debtor.

John H. Fowler, Knoxville, Tenn., for Sevier County Bank.

## MEMORANDUM AND ORDER

CLIVE W. BARE, Bankruptcy Judge.

The liability of a chapter 13 debtor for the payment of a secured creditor's attorney fee incurred in successfully defending an adversary proceeding for breach of contract, commenced by the debtor, is at issue. The secured creditor contends these attorney fees should be included in the amount of its secured claim pursuant to its contractual rights found in the debtor's notes and deeds of trust. The debtor disputes this contention and maintains the attorney fees at issue are excluded under 11 U.S.C.A. § 506 (1979) from the amount of the secured creditor's claim against him.

### I

On August 3, 1979, Leo Ely and his wife, Shirley Ely, executed their promissory note for $31,000.00 to Sevier County Bank (Bank) in consideration of a loan in that amount. The loan proceeds were used to purchase a 2.3-acre tract and an 11.39-acre tract in Sevier County. The Elys gave the Bank a deed of trust covering these two tracts concurrently with the execution of the note. Thereafter, the Bank agreed to loan $106,000.00 to Ely and his wife to finance the construction of a mini-warehouse on the 2.3-acre tract. A note in that amount, payable twelve months from date, was executed on November 5, 1979. A deed of trust against the 2.3-acre tract was contemporaneously executed to secure payment of the note.[1]

Disbursements were made from the construction loan proceeds by the Bank as construction progressed. Between November of 1979 and July of 1980 the Bank disbursed $80,000.00 of the $106,000.00 in the construction loan fund. However, when the Bank learned the square footage of the mini-warehouse was substantially reduced from that originally anticipated by Ely, it refused to make any further disbursements. (The reduction in square footage obviously reduced the projected income from rentals of space in the mini-warehouse. Presumably, the Bank assumed this factor would adversely affect Ely's efforts to arrange permanent financing and repay the Bank's construction loan.)

In October of 1980, the Bank turned the Elys' notes over to an attorney for collection. Foreclosure proceedings to enforce both of the Bank's deeds of trust were commenced during December of 1980. On December 30, 1980, a complaint requesting various relief, including an injunction of the foreclosures by the Bank, was filed by Ely in the Sevier County Chancery Court. An agreed order was entered by the chancellor on March 13, 1981, after the Bank agreed to refrain from pursuing foreclosure for a limited period of time. However, when Ely failed to bring the notes current, foreclosure was reinstituted. Ely thereupon filed a second complaint seeking injunctive relief from the Sevier County Chancery Court. His request was denied. Shortly thereafter, on May 20, 1981, Leo Ely and Shirley Ely filed their chapter 13 bankruptcy petition. (On May 3, 1982, the case was dismissed as to Shirley Ely.)

In the chapter 13 plan Ely proposed to sell both the improved 2.3-acre tract and the unimproved 11.39-acre tract and to deposit the proceeds in a special account. The lien rights of the Bank together with the rights of other lien claimants would attach to the sale proceeds. The debtor, however, reserved an option to secure permanent financing or to sell the property which he averred was worth $140,000.00. The pro-

---

1. The Bank released its prior lien against the 2.3-acre tract, but not the 11.39-acre tract, in consideration of Ely's payment of $5,000.00 against the principal obligation.

posed plan was confirmed on August 19, 1981, with the provision that the proposal to either sell the property or procure permanent financing was to be implemented not later than December 15, 1981.

On August 7, 1981, prior to the entry of the confirmation order, the debtor commenced Adversary Proceeding No. 3–81–0674 to recover compensatory damages for the refusal of the Bank to advance the $26,000.00 in construction funds retained by the Bank. After trial, this court entered judgment dismissing the debtor's complaint with prejudice on February 9, 1982, having determined (1) that the financing agreement was modified by the conduct of the parties and (2) that the Bank did not act unreasonably or breach the contract as modified by withholding the balance of the construction loan funds originally committed to the debtor.

On January 14, 1982, the Bank filed Adv. No. 3–82–0035 seeking either relief from the automatic stay of § 362 or adequate protection. Debtor answered the Bank's complaint and asserted that the fair market value of the two tracts substantially exceeded the amount of the obligation. On February 18, 1982, an agreed judgment was entered providing that the Bank holds a first lien against the two tracts "to secure a debt owed to plaintiff [Bank] in the amount of $133,299.99 as of February 8, 1982, which figure includes principal, interest, attorney fees of seven thousand dollars [$7,000.00] and expenses incurred by the plaintiff [Bank] to said date . . . ." The judgment further provided the debtor was entitled to object to portions of the attorney fees and interest included in the amount of the Bank's claim by filing a motion within ten days of the entry of the agreed judgment. The debtor filed an "Application For Reconsideration" on February 24, 1982, disputing his liability for the Bank's attorney fees in defense of debtor's adversary proceeding against the Bank for breach of contract.

John H. Fowler, the attorney representing the Bank's interest in the debtor's bankruptcy case, has filed his affidavit stating the total amount charged to the Bank for attorney fees and expenses by his firm was $5,000.60 through March 15, 1982.[2] Of this amount, the sum of $3,200.00 is attributable to the Bank's defense in Adversary Proceeding No. 3–81–0674, commenced by the debtor to recover compensatory damages for the Bank's alleged breach of its loan commitment contract. The debtor's liability for the $3,200.00 in attorney fees incurred by the Bank in defense of this action is at issue herein.

II

In its brief the Bank states the issue is whether the attorney fees incurred in its defense of Adversary Proceeding No. 3–81–0674 are secured by the deeds of trust it holds from the debtor. However, since the preparation and filing of briefs in this case, the two security tracts were offered for sale at auction. The high bids for the tracts, both separately and collectively, were insufficient to satisfy the debtor's mortgage indebtedness to the Bank. The bids were thus rejected. Upon request of the Bank, the court entered an order on April 27, 1982, modifying the stay against the Bank to permit foreclosure of its deeds of trust against the two tracts. Thereafter, the tracts were sold at a trustee's sale for a purchase price of *less* than the amount of the Bank's claim. It therefore follows that the $3,200.00 in attorney fees may not be included in the amount of the Bank's secured claim against the debtor. 11 U.S.C.A. § 506(b) (1979). However, the question remains whether these attorney fees are an unsecured obligation of the debtor.

The debtor's November 5, 1979, note to the Bank in the amount of $106,000.00 pro-

---

**2.** The $7,000.00 figure in attorney fees recited in the February 18, 1982, agreed judgment in the instant adversary proceeding presumably includes the attorney fees of the Bank incurred in an attempt to foreclose its deeds of trust and in defense of the Sevier County Chancery Court actions commenced by Ely. Mr. Fowler's firm did not perform any services for the Bank insofar as Ely's case is concerned previous to the filing of the chapter 13 bankruptcy petition on May 20, 1981.

vides in part: "If this note is placed in the hands of an attorney for collection, by suit or otherwise, I/We will pay all costs of collection and litigation, together with a reasonable attorney's fee." The manifest intent of the parties was that the attorney fees of the Bank would be paid by the debtor if the note was turned over to an attorney for collection. The note was, in fact, turned over to an attorney for collection in 1980. The debtor does not oppose the Bank's demand that its fees directly associated with collection of the note be paid by the debtor. However, the debtor does dispute any liability to the Bank for the $3,200.00 attorney fee incurred in Adversary Proceeding No. 3–81–0674.

Significantly, the November 5, 1979, deed of trust recites:

Should the trustee, or the beneficiary herein, be made a party to any suit involving said property, they shall be awarded reasonable expenses, costs and attorney's fees incident to such suit, and the same shall be a further lien against said property enforceable in the same manner as the principal obligation.

Of course, "said property" is the 2.3-acre tract, more particularly described in the November 5, 1979, deed of trust, upon which the mini-warehouse was constructed. The Bank maintains the debtor's breach of contract action involving the Bank's commitment to make a $106,000.00 construction loan was a suit involving the 2.3-acre tract upon which the construction occurred. Specifically, the Bank asserts: "The fact that the debtor initiated a lawsuit and classified it as a suit for damages ... does not alter the fact that the bank was required to ... prove its position with regard to its debt on the real property ...." Brief on Behalf of Plaintiff Sevier County Bank at 6.

In contradistinction, the debtor contends Adversary Proceeding No. 3–81–0674 merely involved an alleged breach of contract and not the property described in the November 5, 1979, deed of trust. Debtor insists that only an action involving either the 2.3-acre tract or payments applied against the note secured by the tract creates an obligation on his part to pay the Bank's attorney fees.

■ Did the breach of contract action against the Bank involve the 2.3-acre tract upon which the mini-warehouse was constructed? The court believes it did. The essence of the debtor's complaint was that the Bank had agreed to make a $106,000.00 construction loan to enable the debtor to finance the construction of the mini-warehouse upon the 2.3-acre tract. The last numbered paragraph of the debtor's complaint recites in material part:

As a result of the defendant's breach of their loan agreement to advance the remaining $26,000.00 of the construction money and to furnish the permanent financing as was agreed the plaintiffs herein have been damaged in that they have been unable to complete the building so as to produce the revenues expected therefrom, have been required to pay and incur considerable expenses to protect their investment, to incur filing furnisher liens ....

The 2.3-acre tract or "the property" is referred to in nearly every paragraph of the debtor's complaint. A considerable amount of testimony at the trial involved or was related to the tract. Clearly, the tract was an integral subject of the debtor's breach of contract action. The conclusion is inescapable that the breach of contract action was a suit involving the 2.3-acre tract. Consequently, the debtor is contractually obligated under the terms of the November 5, 1979, deed of trust to pay the Bank's $3,200.00 attorney fee in question. Had the collateral brought an amount greater than the Bank's claim, the attorney fee would be allowable as part of the Bank's secured claim. 11 U.S.C.A. § 506(b). Since the amount brought was less than the Bank's claim, the obligation is an unsecured claim. The debtor's reliance upon § 506 as excluding the attorney fee is misplaced. Section 506(b) does not limit an *undersecured* creditor's contractual claim for attorney's fee. Section 506(b) merely codifies pre-Code law that an *oversecured* creditor can assert, *as part of its secured claim,* its rights to inter-

est, costs, and attorney's fee arising under its contractual agreement. See S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978) reprinted in U.S.Code & Cong. & Ad.News 5787, 5854.

The attorney fee is allowed. .

IT IS SO ORDERED.