In re HOLYWELL CORPORATION, et al., Debtors.

Bankruptcy No. 84–01590–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Nov. 5, 1986.

Emmet Marvin & Martin, Thomas F. Noone, New York City, and S. Harvey Ziegler, Kirkpatrick & Lockhart, and Steel Hector & Davis, Vance E. Salter, Miami, Fla., for the Bank of New York.

Kozyak & Tropin, P.A., John W. Kozyak, Miami, Fla., and Parker, Chapin, et al., Albert I. Edelman, New York City, Floyd Pearson, et al., P.A., Scott D. Sheftall, Miami, Fla., Williams & Connolly, Raymond W. Bergan, Washington, D.C., for Olympia & York.

Kent, Watts & Durden, Fred H. Kent, Jr., Jacksonville, Fla., Shutts & Bowen, Miami, Fla., Special Counsel, for debtors.

Holland & Knight, Irving M. Wolff, Miami, Fla., for Liquidating Trustee.

### MEMORANDUM DECISION ON ESTATE'S LIABILITY FOR BANK'S FEES AND EXPENSES

THOMAS C. BRITTON, Chief Judge.

The Bank of New York, the largest creditor of these debtors, has applied for attorneys' fees in the amount of $1,300,991, plus attorneys' expenses of $229,434, together with prepetition expenses paid to Florida Power & Light and Turner Construction

Co. in the amount of $325,033 (a total of $1,855,458). (C.P. No. 1281). The Bank seeks reimbursement for these sums, which it has already paid. It was heard on October 20.

The application has been vigorously opposed by the Liquidating Trustee (C.P. No. 1418), the debtors (C.P. No. 1430) and Olympia & York (C.P. No. 1427). Because the objections raised serious question as to whether the Bank's claim had been waived or was time-barred, the application was taken under advisement for a determination of the estate's *liability* with respect to this application, reserving to a further hearing and a separate order the *amount* of that liability in the event that the estate remains liable for any part of the application.

I conclude that the Bank has waived any claim it had under 11 U.S.C. § 503(b)(3)(D) or (4), which provides priority administrative claims for creditors who make a substantial contribution in a reorganization case. I also conclude that the Bank has waived any secured status for any part of this claim for which it has not yet already received credit during the sale that was closed on October 10, 1985. However, I agree with the Bank that its unsecured contractual claim, which it has voluntarily agreed to subordinate to the full payment of Classes 1 through 6 of the confirmed plan, is properly before the court and requires a further hearing for the determination of the amount of that claim.

The Bank's application is asserted, alternatively, as a contractual claim under § 506 and as an administrative claim under § 503(b).

### Contractual Claim § 506

■ On March 20, 1985, in Adversary Proceeding No. 85–0160, the amount and priority of the Bank's lien against the Miami Center property was fixed in a judgment that has become final, reserving only the question whether the Bank's *prepetition* legal and loan expenses (which the Bank by stipulation limited to $831,563) were allowable as part of the lien. That issue was never brought forward by the

Bank and, therefore, was never resolved before the October 10, 1985 closing that occurred pursuant to the confirmed plan. At that closing, the Liquidating Trustee conveyed the Miami Center to the Bank's nominee, giving the Bank full credit for its lien. It is not clear to me whether the Bank received credit for the $831,563 or not, which could bear upon the amount recoverable by the Bank. That point may be clarified at the subsequent hearing.

In the contract of sale executed between the Liquidating Trustee and the Bank at the closing, it was stipulated between these two parties that the closing neither precluded nor prohibited the Bank from seeking and obtaining allowance by the court of its expenses and fees after payment of Classes 1 through 6 inclusive, notwithstanding the fact that the Bank was entitled to a Class 2 priority. In effect, the Bank acknowledged that its claim was a general unsecured claim which it consented to subordinate to the claims of other general unsecured non-insider claims. It did so because commitments had been made to those creditors that they would be paid first.

The objectors argue that the October 10, 1985 closing precludes any further consideration of the Bank's contractual claim predicated upon the provisions in the debtors' notes and mortgages. The notes and mortgages provide in various forms for reimbursement of the reasonable expenses incurred by the Bank in the collection of its debt. I agree that the Bank has lost its opportunity to assert any further *secured* status for this contractual claim because its collateral, the Miami Center property, has now passed from the control of this court and I see no reasonable predicate for the Bank to claim that the real property remains subject to the Bank's unliquidated contractual claim.

■ I disagree, however, with the objectors that the foregoing circumstances extinguish the Bank's *unsecured* contractual claim. Although § 506 does not expressly preserve an unsecured claim, it does not

foreclose one. I see no reason to presume that the unsecured claim is barred simply because it exceeds the value of the pledged collateral. 3 *Collier on Bankruptcy* ¶ 506.05 n. 5 (15th Ed.1986).

The Bank's timely claims 228 through 232 which were filed in this case expressly asserted its claim for attorneys' fees and costs. Those claims remain subject to consideration by the court as unsecured claims. § 502(j).

### Administrative Claim § 503(b)

By an Order dated September 27, 1985 (C.P. No. 1014), all administrative claims were required to be filed not later than October 17, 1985. The Bank's only response to that Order was a motion filed October 17 (C.P. No. 1057) for a hearing to determine its legal and loan expenses pursuant to the judgment of March 20, 1985, which has been discussed above. In that motion, the Bank took notice of the Order of September 27 and correctly noted that the Order related to Class 1 administrative claims under § 503(b). The motion stated:

> The Bank's claims for legal and loan expenses are not sought to be allowed as Class 1 administrative claims, but rather as recoverable expenses under the Bank's lien documents (after payment of all Class 1 through Class 6 claims). The Final Judgment of March 20, 1985 reserved ruling in respect to such expenses.

The motion further recited that:

> Since the claims are not Class 1 administrative claims, the Bank's request for a hearing will not delay or impede (a) the Class 1 fee applications to be heard on October 21, 1985, or (b) the payment of undisputed Class 1 through Class 6 claims pursuant to the Plan.

This motion, which was unopposed, was granted (C.P. No. 1072) and the Bank was directed to file an application and set a hearing.

The objectors argue that in the foregoing motion the Bank unambiguously waived its right to assert an administrative claim under § 503(b) and elected to assert only its contractual claim, acknowledging its previous consent to subordination of that contractual claim. The objectors also argue that the Bank's administrative claim, asserted for the first time in the instant application filed June 13, 1986 is time-barred by the Order of September 27, 1985. I agree with the objectors in both respects.

The Bank's only response is the suggestion that because there is no statutory provision nor any rule which imposes a deadline for the filing of administrative claims under § 503, such claims may be filed at any time. By inference, the Bank argues that the court lacks authority to impose a deadline as was done in this instance. The Order was clearly within the court's reasonable discretion under § 105(a). It is essential that administrative claims, which are entitled to first priority in a bankruptcy distribution, be established with finality before any distribution may be made to any subordinate classes of creditors. This deadline was fixed, without objection from any party, to coincide with the distribution provided under the confirmed plan. Its establishment in this case was necessary, reasonable and authorized by § 105(a).

As has already been noted, the rejection of the Bank's alternative theory belatedly asserted under § 503(b) is consistent with the Bank's previous position and the Bank's consent to subordinate its fees and expenses to the Class 1 through 6 claims. The rejection of this alternative theory has no effect on the Bank's contractual claim, other than a possible effect on the amount allowable, a consideration which must await a further hearing.

A further hearing on the Bank's application will be held on Thursday, November 20, 1986 at 9:30 a.m. in Courtroom 1406 at 51 SW 1st Avenue, Miami, Florida, to hear the parties with respect to the *amount* of the Bank's claim.

I have deliberately entered this Memorandum Decision without an accompanying order because I intend that there be a single, final appealable order upon the Bank's application, which includes the fix-

ing of the amount of that claim. The review of that final order would reach the issues discussed in this Memorandum Decision. My purpose, obviously, is to avoid the inconvenience and confusion that could result from two appealable orders which might be assigned to different District Court judges for review.