## In re Anna KALIAN, Debtor.

### Bankruptcy No. 92–13641.

United States Bankruptcy Court,
D. Rhode Island.

July 18, 1994.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, for debtor.

Deena F. Christelis, Cuzzone, Geremia & Civittolo, Providence, RI, for Chapter 11 Trustee.

Antonio Afonso, Jr., Steven M. Richard, Tillinghast Collins & Graham, Providence, RI, for Northeast Savings, F.A.

Office of the United States Trustee, Sheryl Serreze, Providence, RI.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on January 20, 1994, on Northeast Savings Bank's motion for relief from the automatic stay. At the end of the hearing the Court denied Northeast's request for leave to foreclose, without prejudice, and requested memoranda on the ancillary issue of whether the Debtor's postpetition payments on the Northeast promissory note should be credited to principal or interest. Because Northeast is an undersecured creditor, and for the other reasons stated below, we conclude that said payments should be applied to principal.

## FACTS

On December 28, 1992, Anna Kalian filed a voluntary Chapter 11 petition, and on August 12, 1993, Louis Geremia, Esq., was appointed Chapter 11 Trustee. The subject property is a commercial plaza owned by the Debtor, consisting of four units located at 711 Broad Street, Providence, Rhode Island ("Broad Street Plaza"). Northeast Savings Bank, as successor-in-interest to the East Providence Credit Union, has the first mortgage on the Plaza, as well as an assignment of rents and leases. On the date of the petition the balance due Northeast was $654,022. (See I.R.S. Form 1098, Ex. A to Trustee's Am. Supp.Mem.) The parties agree that the value of the property is $500,000.

On March 25, 1993, an order was entered whereby Northeast consented to the Debtor's use of rents generated from the plaza, on the condition that the Debtor: (1) bring her postpetition debt to Northeast current; and (2) maintain "the full monthly payment of principal and interest totaling $6,678.94 ... on or before the 15th day of each month commencing April 15, 1993." (Consent Order, March 23, 1993). Pursuant to said Order, the Debtor has paid $80,147, which Northeast credited as follows:

| | |
|---|---|
| Interest | $65,730 |
| Late Charges | $ 3,341 |
| Principal | $14,464 |

Northeast argues that the manner in which it applied the payments was proper, since it is the holder of two separate and distinct security interests—one in the real estate, and another in the rental income. The Bank contends that because rents constitute cash collateral, and since the Debtor was permitted to use cash collateral, it was therefore entitled to adequate protection with respect to said rental income.

The Trustee argues, pursuant to 11 U.S.C. § 506(b), and the holding in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), that as an undersecured creditor, Northeast is not entitled to postpetition interest—*period.* Additionally, he argues that an assignment of rent should not be treated as a separate source of collateral, because the value of the underlying real estate is reflected, in the first instance, by the rental income stream.

## DISCUSSION

There is a split of authority on this issue, with the following cases supporting Northeast's position: *In re Flagler-at-First Assocs. Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990); *In re Birdneck Apartment Assocs. II, L.P.*, 156 B.R. 499 (Bankr.E.D.Va.1993); and *In re Landing Assocs., Ltd.*, 122 B.R. 288 (Bankr. W.D.Tex.1990); and another line supporting the position taken by the Trustee; *In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr. N.D.Ga.1991); and *In re Reddington/Sunar-*

*row Ltd. Partnership,* 119 B.R. 809 (Bankr. D.N.M.1990). Upon consideration of these authorities, and for the reasons given below, we decline to follow the cases cited by Northeast, but rely instead on the authorities presented by the Trustee.

The Supreme Court in *United Sav. Ass'n of Texas v. Timbers,* 484 U.S. 365, 108 S.Ct. 626, addressing facts similar to those before us, ruled substantially in accordance with the argument made by the Trustee in this case. The undersecured creditor in *Timbers* held a mortgage and an assignment of rents on the Debtor's apartment complex as security for a note in the original principal amount of $4,100,000. *Id.* at 368–69, 108 S.Ct. at 628–29. Notwithstanding the fact that the real estate was appreciating slightly in value, the Debtor agreed to turn over postpetition rents to the creditor. *Id.* The creditor then moved for additional payments, and the bankruptcy court agreed, holding that the creditor was entitled to interest on the amount it could have received at foreclosure, commencing six months after the filing of the Chapter 11 petition. *Id.* at 369, 108 S.Ct. at 629. The bankruptcy court also ruled that the postpetition rents could be applied to these (interest) payments. *Id.*

On appeal, the District Court affirmed the Bankruptcy Court, but the Fifth Circuit *en banc* reversed. *Id.* The Supreme Court, in affirming the Fifth Circuit, held that an undersecured creditor whose collateral is not declining in value is not entitled to adequate protection payments during the pendency of the automatic stay, under 11 U.S.C. § 362(d)(1).[1] *Id.* at 369–382, 108 S.Ct. at 629–36; *see also In re Oaks Partners,* 135 B.R. at 449. The Supreme Court also ruled that under 11 U.S.C. § 506(b) an undersecured creditor is not entitled to interest on its claim.[2] *Id.* 484 U.S. at 372, 108 S.Ct. at

630. We conclude that *Timbers* is applicable to the instant case and that Northeast, as an undersecured creditor whose collateral is not declining in value, is not entitled to either adequate protection or postpetition interest on its claim.

Some courts have criticized this interpretation of *Timbers,* saying it is too broad, and reads § 552(b) out of the Code. *See In re Birdneck Apartment Assocs.,* 156 B.R. at 505. In *Birdneck* an undersecured creditor was allowed to apply postpetition payments to interest on its claim. The rationale was that under § 552 the creditor had a "continuing perfected postpetition security interest in rents" and the rental revenue constituted cash collateral as to which the creditor was entitled to adequate protection. *Id.* In trying to distinguish *Timbers,* the *Birdneck* court said that *Timbers* only prohibits payments to undersecured creditors from unencumbered assets when there is no evidence that the collateral is declining in value, *Birdneck,* 156 B.R. at 505, and that since the rental income in *Birdneck* was encumbered, payment of interest to the undersecured creditor from that source was authorized. This reasoning, we think, oversimplifies the issue. Section 552(b) provides:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankrupt-

---

1. Section 362(d) states in part:

   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

   11 U.S.C. § 362(d)(1).

2. Section 506(b) states:

   To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

   11 U.S.C. § 506(b).

cy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. 11 U.S.C. § 552(b). We regard the *Birdneck* reading of *Timbers* as flawed because, although the Supreme Court in *Timbers* acknowledged that under § 552(b) a perfected security interest in rents continues postpetition, the *Timbers* Court went on to say "[s]ection 552(b) therefore makes possession of a perfected security interest in postpetition rents or profits from collateral a condition of having them applied to satisfying the claim of the secured creditor ahead of claims of unsecured creditors." *Timbers*, 484 U.S. at 374, 108 S.Ct. at 632; *see also In re Oaks Partners*, 135 B.R. at 450.

■ In analyzing the Supreme Court opinion in *Timbers*, it is important to remember that the Bankruptcy Court allowed interest on the undersecured creditor's claim to be paid from post-petition rents in which the creditor had a perfected security interest. *See Timbers* 484 U.S. at 369, 108 S.Ct. at 629. If such a result were intended under § 552(b), as Northeast suggests, the Supreme Court would have had ·to make that clear. We read § 552(b) as allowing an undersecured creditor with a perfected security interest in rents, to retain that security interest. But we also understand that if rents are paid to an undersecured creditor *while its collateral is not declining in value*, said rents must be applied to principal, so as not to render § 506(b) meaningless.[3] *See In re IPC Atlanta Ltd. Partnership*, 142 B.R. 547, 559 (Bankr.N.D.Ga.1992); *In re Oaks Partners*, 135 B.R. at 450.

To accept Northeast's argument, it would necessarily follow that as the Chapter 11 case progressed, Northeast's security would increase because of its alleged "separate security interest" in the rents, while its unsecured deficiency claim decreased. The Supreme Court said in *Timbers*, and common

sense suggests, that this result was not intended. 484 U.S. at 372, 108 S.Ct. at 630–31, *see also In re Oaks Partners*, 135 B.R. at 450. In discussing whether a secured creditor's right to immediate possession of its collateral upon the debtor's default is an "interest in property" under § 506(c) the Court said:

> If ... [the creditor's right to immediate possession of its collateral] were included, 'the value of such creditor's interest' would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended.

*United Sav. Ass'n of Texas v. Timbers*, 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988).

Similarly, in *In re Smithfield Estates, Inc.*, 48 B.R. 910 (Bankr.D.R.I.1985), we said

> [a]n (under)secured creditor's position is no worse immediately after the filing than it was just prior thereto, and the provision for adequate protection may only protect the secured creditor from any impairment in the value of its interest that is *attributable to the stay* .... The concept of adequate protection was not designed or intended to place an undersecured or minimally secured creditor in a better postfiling position than it was in before the stay.

*Id.* at 914–15. In the instant case, if Northeast had foreclosed on its collateral prior to the Chapter 11 filing, it would have realized, at most, approximately $500,000, and would have ended up with a deficiency claim of at least $150,000. There is no evidence that the value of Northeast's collateral has decreased during the pendency of this case—in fact the opposite may be true.[4] So that if the postpetition payments in question are applied as

---

3. We believe this interpretation harmonizes both Code sections that are in potential conflict, and fairly carries out the Congressional intent behind each section. *See In re Ionosphere Clubs, Inc.*, 22 F.3d 403, 407 (2d Cir.1994); *Steele v. Pridham (In re Pridham)*, 31 B.R. 497, 499 (Bankr. E.D.Cal.1983).

4. The Trustee represented during the relief from stay hearing that the rent paid by one tenant in the plaza would soon increase, raising the rental stream from the plaza, and that by using the income approach to valuation, a slight increase in the indicated market value of the Bank's collateral was likely.

Northeast suggests, it will have received approximately $69,000 more *because* of the bankruptcy filing. We think that this type of creditor enhancement was neither intended nor articulated by the drafters.

Accordingly, and based upon the foregoing discussion, we conclude that Northeast is precluded from collecting post-petition interest payments, both under 11 U.S.C. § 506(b) and the holding in *Timbers*. While Northeast continues to have a perfected security interest in rent under § 552(b), this may not increase the value of its secured claim, and any postpetition payments of rental income to Northeast should be applied to the principal balance of its secured claim, as long as Northeast remains undersecured. *See* Nimmer, *Chapter 11 Theory and Practice* § 16.-52.

Enter Judgment consistent with this opinion.