In re **HOMESTEAD PARTNERS, LTD., Debtor.**

**HOMESTEAD PARTNERS, LTD., Movant,**

v.

**CONDOR ONE, INC., Respondent.**

Bankruptcy No. A95–76964–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 6, 1996.

John A. Christy, Schreeder, Wheeler & Flint, Atlanta, GA, for Debtor.

Sarah Robinson Borders, Darryl S. Laddin, King & Spalding, Atlanta, GA, for Condor One, Inc.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Now before the Court in this proceeding is an Objection by Homestead Partners, Ltd. (hereinafter "the Debtor") to the Proof of Claim filed by Condor One, Inc. (hereinafter "Condor"). This matter gives rise to a core proceeding within the Court's subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B). Having conducted a hearing on the Debtor's Motion, and having thereafter afforded each party an extensive opportunity to submit further briefs on the subject, the Court shall dispose of this controversy in accordance with the following reasoning.

### Factual Background

On December 29, 1986, the Debtor obtained from York Associates, Inc., a predecessor in interest of Condor, a loan in the original principal amount of $10,000,000.00. To evidence that indebtedness, the Debtor executed a promissory note and a deed providing the lender a security interest in its sole asset, an apartment complex known as Olde Plantation Apartments, as well as an interest in the rents which might be derived from its operations. Like most instruments of its type, the promissory note also provided for the payment of reasonable attorney's fees if it subsequently became necessary to collect the indebtedness by such means.

The Debtor ultimately defaulted in its performance under the loan agreement and, through a letter dated October 26, 1995, Condor gave notice of its election to accelerate the indebtedness and to enforce its state law right to attorney's fees. As proscribed by statute, this demand letter informed the Debtor that liability for such attorney's fees could be avoided by paying the entire indebtedness within ten days thereafter.[1]

---

1. Condor sent this letter of notice pursuant to O.C.G.A. § 13–11–1, which governs the recoverability of attorney's fees with the following provision:

   (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

   (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;

   (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness

   and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;

   (3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party to be held on said obligation has ten days from the receipt of said notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

   O.C.G.A. § 13–1–11 (1982). Both parties agree that, by sending the letter and otherwise complying with the provisions of section 13–1–11, Con-

The ten days passed, however, with no payment being made by the Debtor. Thus, on November 29, 1995, in an attempt to protect its interests, Condor obtained the appointment of a receiver over the Debtor's affairs. The Debtor filed a Chapter 11 petition the next day, commencing the present bankruptcy case and cutting short Condor's efforts at collection.

In the wake of that bankruptcy filing, Condor since has filed a proof of claim in the amount of $13,312,268.26. Approximately $1,210,228.93 of that claimed amount is said by Condor to represent a flat percentage entitlement to attorney's fees under Georgia law, while $9,818,850.66 reflects principal indebtedness, and the remaining $2,337,196.34 represents interest and penalties which accrued before the petition date. Condor openly concedes that its $1,210,228.93 attorney's fee claim bears no relationship to legal work actually performed by its counsel, but instead merely represents a percentage based upon statutory guidelines found within the Georgia Code.

Condor also claims that, pursuant to its security deed and applicable provisions of the Bankruptcy Code, this claim is secured to the extent of:

(1) the value of the Debtor's real and personal property;

(2) pre-petition rents or proceeds generated as a result of the operation of the property which were in the possession or control of the Debtor on November 30, 1995;

(3) post-petition rents or proceeds generated as a result of the operation of the property which are in the possession or under the control of the Debtor as of the confirmation date; and

(4) any insurance proceeds relating to its collateral.

By contrast, Condor purports to hold an unsecured claim for the amount by which the $13,312,268.26 exceeds the value of those collateral items.

Through its objection to proof of claim, the Debtor has responded with two legal challenges upon the quantum and quality of Condor obtained a valid and enforceable right to

dor's allowable claim. First, the Debtor contends that pre-filing compliance with O.C.G.A. § 13–1–11 does not give rise to an unreviewable and unavoidable right to a surplus percentage payment which must be allowed as an unsecured claim in bankruptcy. To the contrary, the Debtor submits that Bankruptcy Code section 506(b) pre-empts any such state law right to fees, deeming only oversecured creditors to be capable of recovering post-petition attorney's fees. As such, contends the Debtor, the Court should disallow any statutory claim for fees by Condor, a less than fully secured creditor.

Secondly, the Debtor challenges Condor's claim to post-petition rental payments as a means of augmenting the secured component of its claim. To do so, reasons the Debtor, would allow Condor to increase the proportional relationship of its secured and unsecured claims, thereby violating a longstanding prohibition against such posturing for improved position in bankruptcy. Thus, the Debtor argues that post-petition rental income should not be incorporated as part of Condor's secured claim, notwithstanding the provisions of its security agreement making such payments part of its collateral. The parties having so isolated the issues before it, the Court will turn its attention to each of the legal questions which have been raised.

## Discussion

### I. The Recoverability of Statutory Attorney's Fees as an Unsecured Claim.

■ Bankruptcy Code section 506(b) makes the following provision for secured creditors' recovery of post-petition attorney's fees and interest:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). Given this mandate, it stands without dispute that post-petition fees

attorney's fees under Georgia law.

and interest may be recovered as part of a secured claim if, and only if, that claim is oversecured. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–45, 109 S.Ct. 1026, 1030–32, 103 L.Ed.2d 290 (1989); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 631–32, 98 L.Ed.2d 740 (1988); *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 74 (5th Cir.1992). To the extent that any provision of state law otherwise permits recovery of such fees and interest as part of a secured claim, section 506(b) serves to pre-empt its application, making that aspect of the creditor's secured claim invalid in bankruptcy. *See Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674, 675 (9th Cir.1986); *First Federal Savings & Loan Ass'n of Warner Robins v. Standard Building Assoc., Ltd. (In re Standard Building Assoc., Ltd.)*, 85 B.R. 644, 648 (Bankr. N.D.Ga.1988) (Cotton, J.); *In re Centre Court Apartments, Ltd.*, 85 B.R. 651, 659–61 (Bankr.N.D.Ga.1988) (Bihary, J.).

By the same token, however, section 506(b) provides little guidance on the secondary question now before the Court, whether creditors not capable of recovering post-petition fees or interest as a section 506(b) secured claim still may have them paid as a general unsecured claim. *See United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society of the United States (In re United Merchants & Manufacturers, Inc.)*, 674 F.2d 134, 138 (2d Cir.1982) ("[n]either the statute nor its legislative history sheds any light on the status of an unsecured creditor's contractual claim for attorney's fees"). The Code's provision for unsecured claims, found within section 502, does resolve this ambiguity as it pertains to post-petition interest by deeming all such claims for unmatured interest to be void in bankruptcy. *See* 11 U.S.C. § 502(b)(2); *see also Timbers of*

*Inwood*, 484 U.S. at 372–73, 108 S.Ct. at 631–32 (due to section 502(b)(2)'s general disallowance of unmatured interest claims, section 506(b) presents the only vehicle for recovering post-petition interest in the course of a bankruptcy case). Section 502, however, contains no such declaration of invalidity regarding creditors' unsecured claims for post-petition fees.[2] One, therefore, reasonably could conclude that statutory percentage-based claims for post-petition fees, such as those arising under O.C.G.A. § 13–11–1, may be presented via an unsecured claim, notwithstanding section 506(b). *In re 268 Ltd.*, 789 F.2d 674, 678 (9th Cir.1986) (portion of oversecured creditor's five percent attorney's fee charge that was not payable as a reasonable section 506(b) assessment nevertheless could be asserted as a general unsecured claim under section 502); *In re Martin*, 761 F.2d 1163, 1168 (6th Cir.1985); *United Merchants*, 674 F.2d at 138; *Liberty Nat'l Bank & Trust Co. of Louisville v. George*, 70 B.R. 312, 316–17 (W.D.Ky.1987) (undersecured creditor validly could assert unsecured claim for post-petition attorney's fees); *Marine Midland Bank, N.A. v. Ladycliff College (In re Ladycliff College)*, 56 B.R. 765, 769 (S.D.N.Y.1985) ("such an unsecured claim for expenses is not barred by § 506(b)"); *In re Holywell Corp.*, 68 B.R. 134, 136 (Bankr. S.D.Fla.1986) (unsecured claim for post-petition fees allowed); *In re Ely*, 28 B.R. 488, 491 (Bankr.E.D.Tenn.1983) ("[s]ection 506(b) does not limit an undersecured creditor's contractual claim for attorney's fees"); *but see Sakowitz, Inc. v. Chase Bank Int'l (In re Sakowitz)*, 110 B.R. 268, 272–73 (Bankr. S.D.Tex.1989) (rejecting the assertion that an unsecured claim for post-petition fees may be allowed under section 502).

■ Nevertheless, assuming arguendo[3] that post-petition fees indeed may be re-

---

**2.** This absence of any such exception carries even more importance when viewed in the context of the Code's claims allowance process. Claims enjoy a presumption of validity under the Bankruptcy Code. *See* 11 U.S.C. § 502(a). When a party in interest objects to a proof of claim, the Code specifically directs that the claim "shall be allowed" unless one of nine exceptions, such as that for unmatured interest, should happen to apply. *See* 11 U.S.C. § 502(b). The Court having found no exception to the contrary

within section 502(b), the "shall" language of the section would appear to demand that no such exception be inferred and that the pursuit of post-petition fees be permitted on an unsecured basis.

**3.** While deferring any ruling on the issue of unsecured claims for post-petition fees, the Court does note its belief that O.C.G.A. § 13–11–1 should not be read to provide an unqualified

couped on an unsecured basis, this assumption will not lead to such a recovery in the instant case, for Condor's act of perfecting its state law right to fees constituted a preference subject to avoidance in bankruptcy under 11 U.S.C. § 547(b). As that section provides, an avoidable preference is:

\*　　\*　　\*　　\*　　\*　　\*

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Any mode, "direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property" will qualify as a transfer for the purposes of section 547(b). *See* 11 U.S.C. § 101(54). Moreover, transfers generally are said to take place under section 547(b) at whatever point state law deems them perfected. 11 U.S.C. § 547(e)(2)(B).

■ Here, by sending the Debtor a "ten-day letter," Condor accomplished the perfection of its statutory right to attorney's fees, and consequently, a transfer then took place for the purposes of the Bankruptcy Code. *See Bulman v. First Nat'l Bank of Chattooga County,* 165 Ga.App. 843, 844, 303 S.E.2d 29 (1983) (creditor's right to percentage-based recovery under O.C.G.A. § 13–11–1 is not perfected until mailing of statutory notice and expiration of the ten-day payment opportunity); *Woods v. State,* 109 Ga.App. 225, 227–28, 136 S.E.2d 18 (1964) (interpreting the predecessor to O.C.G.A. § 13–11–1 similarly); *see also Ehring v. Western Community Moneycenter (In re Ehring),* 91 B.R. 897, 899 (Bankr. 9th Cir.1988); *Waldschmidt v. Chrysler Credit Corp. (In re Messenger),* 166 B.R. 631, 634 (Bankr.M.D.Tenn.1994) (perfection of right to payment under a security agreement is avoidable if it occurred within the 90–day preference period). This perfection-begetting transfer also came on account of an antecedent debt under the loan, and it appears to have taken place at a time when the Debtor was insolvent. *See* 11 U.S.C.

---

right to a percentage payment with no regard for the actual nature of such expenses or their corresponding reasonableness. To the contrary, if creditors may present claims for post-petition attorney's fees on an unsecured basis, it still remains within the Court's basic equitable power to review such fee requests and, to the extent that they are not reasonable, to order that the fees be disallowed. *See In re Keaton,* 182 B.R. 203, 209 (Bankr.E.D.Tenn.1995) (concluding that creditors may present unsecured claims for post-petition fees, yet noting the Court's inherent power to insure reasonableness).

Such a conclusion appears uniquely warranted in the application of O.C.G.A. § 13–1–11, which licenses the recovery of a percentage-based claim for fees, even if no such attorney's fees in fact have been incurred. As several courts have noted and as the instant case demonstrates, section 13–1–11 of the Georgia Code offers an inequitable windfall in bankruptcy, since the right to

payment derived thereunder does not depend upon the amount of work actually performed by counsel. *See United States v. Allen,* 699 F.2d 1117, 1123 (11th Cir.1983); *In re Ridgewood Apartments of DeKalb County, Ltd.,* 174 B.R. 712, 719 (Bankr.S.D.Ohio 1994) (finding the application of O.C.G.A. § 13–1–11 to offend equity and raise questions of professionalism); *Centre Court,* 85 B.R. at 655 ("federal courts have recognized that percentage fee assessments under O.C.G.A. § 13–1–11 are grossly disproportionate to the amount of fees actually incurred and that they in fact provide a windfall to the creditor, at the expense of the other creditors or the equity interest holders"). As a tribunal of equity, the Court must strive to prevent such adverse effects by exercising its power of review over those applications and by disallowing the payment of fees not actually or reasonably incurred. *Keaton,* 182 B.R. at 209.

§ 547(f) (raising a rebuttable presumption of insolvency). Finally, absent the mailing of the letter and expiration of the ten-day period just before bankruptcy, Condor would have no right to claim such fees under O.C.G.A. § 13–11–1, meaning that the transfer produced a $1.2 million right to payment for the creditor that otherwise would have been unavailable in a Chapter 7 liquidation. *In re Standard Building Assoc., Ltd.,* 85 B.R. at 648–49; *Fidelity National Bank v. Walsey (In re Walsey),* 7 B.R. 779, 785–86 (Bankr.N.D.Ga.1980) (Robinson, J.) (no fees may be collected under the Georgia statute unless the ten-day letter has been sent and the period for payment has expired). In short, the perfection of Condor's right to fees constituted a preference, and it should be avoided as such. Since Georgia law clearly holds that an unperfected claim for fees of this nature has no force, *see id.,* the Court shall grant this aspect of the Debtor's objection to the Condor claim, disallowing the $1,210,228.93 fee claim in its entirety.

## II. The Impact of Post–Petition Rents Upon the Secured Aspect of Condor's Claim.

■■■ As to the second issue before it, the Court must determine the manner in which Condor's security interest in the post-petition rents from the Debtor's single asset should affect the valuation of its secured claim. On the status and enforceability of such interests in post-petition assets, Code section 552 provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement en-

tered into by the debtor before the commencement of the case.

\*　　\*　　\*　　\*　　\*　　\*

(b)(2) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552 (1994). By design, this section insures that lenders will enjoy the full benefit of their security interests in post-petition rents, even when state law would deem that interest to be improperly perfected.[4]

In view of this mandate, one naturally would expect the valuation of secured claims to include post-petition rents whenever the lender holds a security interest to that effect. After all, as Code section 506(a) unequivocally directs, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). Such security interests having been validated by section 552, the straightforward logic of section

---

4. Prior to the introduction of current section 552(b)(2) as part of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, a split had existed on the post-petition enforceability of security interests in the rents from estate property. Largely driven by *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), wherein the Court held that mortgagees' rights to rent must be decided by state law, this problem involved a common state law requirement that such interests must be perfected by the lender's taking some act to control the rents or property at issue. *See, e.g., In re Multi–Group III Ltd. Partnership,* 99 B.R. 5, 10 (Bankr.D.Ariz.1989) (failure to take possessory action required by

state perfection statute meant that creditor could not assert security interest over post-petition rents). At the same time that state law placed such demands upon the creditor, bankruptcy's automatic stay provision frequently blocked any attempt to satisfy this aspect of the perfection process. *See* 11 U.S.C. § 362(a)(1) (forbidding attempts to exercise control over estate property). Thus, Congress amended section 552 to provide that security interests in post-petition rents shall be deemed enforceable in bankruptcy notwithstanding their perfected status, unless the Court orders otherwise. *See Section-by-Section Description of H.R. 5116,* 140 Cong.Rec. H10768 *(daily ed. October 4, 1994).*

506(a), therefore, would seem to demand their inclusion in the process of valuing secured claims.

Notwithstanding this apparent dictate from sections 552 and 506(a), however, several courts have in fact refused to include post-petition rents in their valuations of secured claims. These courts find justification for such a result in the case of *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* and, in particular, the following language in that opinion:

> In subsection (a) of [section 506] the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests that this was intended.

484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). Noting that the inclusion of post-petition rents in the valuation process would result in relative claim fluctuations similar in nature to those criticized by the *Timbers* Court, these courts exclude any such value from the calculation of secured claims under section 506(a). *See e.g., In re Kalian,* 169 B.R. 503 (Bankr.D.R.I.1994). In its place, a single valuation made at the commencement of the bankruptcy case, and consequently structured to exclude post-petition rents, is said to govern all matters implicating the respective secured and unsecured components of a creditor's claim. *See In re Kalian,* 169 B.R. at 503; *In re Reddington/Sunarrow Ltd.,* 119 B.R. 809, 813 (Bankr. D.N.M.1990); *see also In re Embassy Properties North L.P.,* 196 B.R. 172, 179–80 (Bankr.D.Kan.1996).[5]

When viewed under a bright light, however, this "single valuation" approach finds no support whatsoever from the text of the Supreme Court's *Timbers* decision. Granted, the *Timbers* court condemned progressive fluctuations between secured and unsecured claims, but it did so only in the limited context of disproving that lost foreclosure rights could generate such increases. *See id.* at 371–72, 108 S.Ct. at 631–32. Consequently, when taken in context, this language cannot be read as directly governing the application of post-petition rents to secured creditors' claims. *Creekstone Apartments Assoc., L.P. (In re Creekstone Apartments Assoc., L.P.),* 1995 WL 588904, No. 3:94–0382 at *16 (M.D.Tenn. Sept. 18, 1995) (*Timbers* is "not squarely on point" and, therefore, does not control the question of whether post-petition rents should be factored into the secured claim's valuation).

Indeed, one only need examine the full text of the *Timbers* holding to find direct contradiction of the single valuation premise, since one of the key modes of reason employed therein arose from a distinction between the treatment afforded post-petition rents and the matter at issue. After first defining the term "interest in property" as "the right of a secured creditor to have the security applied in payment of the debt," *id.* at 370, 108 S.Ct. at 630, the Court provided the following analysis:

> Section 552(a) states the general rule that a pre-petition security interest does not reach property acquired by the estate or debtor post-petition. Section 552(b) sets forth an exception, allowing post-petition "proceeds, product, offspring, rents, or profits" of the collateral to be covered only if the security agreement expressly provides for an interest in such property.... Section 552(b) therefore makes possession of a perfected security interest in post-petition rents or profits from collateral a condition of having them applied to satisfy-

---

**5.** This "single valuation" line of case law should not be confused with the holding in *Confederation Life Insurance Co. v. Beau Rivage Ltd.,* 126 B.R. 632 (N.D.Ga.1991), wherein the district court affirmed this Court's denial of adequate protection payments for rent-related depreciation. There, the Court found that the Debtor's application of post-petition rents to improving the building had effected a transfer of value "from one source of collateral to another," such that no net impairment had resulted. *Id.* at 639. If anything, the Court's *Beau Rivage* holding should be read as consistent with the judgment rendered today, to the extent that acceptance of rent as part of the lender's collateral value and resulting secured claim formed a logical premise to that decision.

ing the claim of the secured creditor ahead of the claims of unsecured claims. Under [the creditor's] interpretation, however, the undersecured creditor who lacks such a perfected interest in effect achieves the same result by demanding the "use value" of his collateral under § 362.

*Id.* at 374, 108 S.Ct. at 632. Thus, by noting that a valid security agreement will entitle the holder to priority payment from post-petition rents, *Timbers of Inwood,* the very case cited to support the "single valuation" model, appears to undercut its suggestion that post-petition rents be excluded from a lender's secured claim in derogation of the underlying security agreement. *In re Union Meeting Partners,* 178 B.R. 664, 676 (Bankr. E.D.Pa.1995); *In re Flagler–At–First Associates,* 114 B.R. 297, 303 (Bankr.S.D.Fla. 1990).

The *Timbers* decision aside, however, the "single valuation" approach violates both the spirit and the text of the Bankruptcy Code's statutory plan, and must be rejected as such. Certainly, were a single valuation at the commencement of a case to govern all treatment of lenders' secured claims, section 552's validation of security interests in post-petition rents would be rendered substantially moot. *See In re Bloomingdale Partners,* 155 B.R. 961, 976 (Bankr.N.D.Ill.1993) (finding that single valuation renders section 552(b) "a practical nullity and theoretical absurdity"). If for no reason other than that patent conflict with section 552(b)'s specific provision for such interests in post-petition rental income, the single valuation approach, therefore, offends fundamental precepts of statutory construction. *In re Creekstone Apartments Assoc., L.P.,* 1995 WL 588904 at *17– 18 (citing *In re Union Meeting Partners,* 178 B.R. at 674–75).

The shortcomings of "single valuation," however, do not end simply with its derogation of section 552. Rather, the concept of one-time valuation also seems to undermine the very structure of the Code's fundamental valuation provision, which states that the amount of secured claims "shall be deter-

mined in light of the purposes of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." *See* 11 U.S.C. § 506(a); *see also In re Delta Resources, Inc.,* 54 F.3d 722, 729 (11th Cir. 1995) ("[o]rdinarily, the matter of adequate protection is determined at or near the inception of the case"); *Prudential Ins. Co. v. Monnier (In re Monnier Bros.),* 755 F.2d 1336 (8th Cir.1985) (creditor's secured status for confirmation purposes should be determined as of the effective date of the plan); *Stoller's, Inc. v. Peoples Trust Bank (In re Stoller's, Inc.),* 93 B.R. 628 (Bankr.N.D.Ind. 1988) (valuation for the purpose of measuring entitlement to proceeds of collateral's disposition should be made at the time of disposition). A "single valuation" approach would require that the Court disregard such language, instead conducting a "one size fits all" valuation at the time of filing. *See In re Addison Properties L.P.,* 185 B.R. 766, 775 (Bankr.N.D.Ill.1995); *In re Landing Assoc. Ltd.,* 122 B.R. 288, 293 (Bankr.W.D.Tex.1990) (criticizing this aspect of single valuation). As such, that approach serves to contravene the specific valuation system advanced by section 506(a), in addition to violating the policy behind section 552.

Clearly, therefore, both the text of the Code and common reason demand a course of action substantially different than that which is contemplated by single valuation. To the extent that it relies upon the endorsement of such an approach by other courts, the Debtor's per se objection to the inclusion of post-petition rents as part of Condor's secured claim consequently shall be denied.[6]

**Conclusion**

The Court having given the matter due consideration, it hereby is **ORDERED** that the Objection by Homestead Partners, Ltd. to the Proof of Claim filed by Condor One, Inc. is **GRANTED IN PART** and **DENIED IN PART.** Condor's proof of claim is disallowed to the extent that it seeks the recovery of $1,210,228.93 in statutory attorney's fees

---

**6.** In disposing of the Debtor's objection to any inclusion of post-petition rents in the value of Condor's secured claim, the Court finds it important to note the limited scope of its ruling. Rather than erecting a per se bar to the inclusion of

such interests as part of a creditor's secured claim, the Court finds that the impact of post-petition rents upon matters of valuation must depend entirely upon the context in which those questions are raised. This ruling, therefore,

under O.C.G.A. § 13–1–11. At the same time, however, there shall be no absolute disallowance of post-petition rents from the calculation of Condor's secured claim, as suggested by the Debtor in a second basis of its objection.

**IT IS SO ORDERED.**

should be read as rejecting both the uniform inclusion and the per se exclusion of post-petition rents as part of the valuation calculus. In lieu of any such across the board treatment of the valuation question, the Court finds the following suggestion from *Addison Properties* to be most persuasive:

> For purposes of adequate protection, the claim of the secured creditor is fixed as of the date of filing. Section 552(b) proceeds increase the collateral securing that claim, but do not increase the claim for purposes of adequate protection. Accordingly, if the underlying collateral is not declining in value or at risk of declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses, as well as to maintain or improve the underlying collateral or to make payments on the creditor's claim.

     \*     \*     \*     \*     \*     \*

At confirmation, the secured claim is revalued. The total claim is reduced by any payments made by the debtor, and the collateral securing the claim is reappraised. Any proceeds under Section 552(b) that have not been expended by the debtor, and are not necessary to pay expenses of preservation under Section 506(c), increase the amount of the secured claim.

*See Addison Properties*, 185 B.R. at 784; *see also In re Duval Manor Assoc.*, 191 B.R. 622, 633–34 (Bankr.E.D.Pa.1996) (adopting *Addison*'s "dual valuation" approach as the most reasonable reconciliation of sections 552(b) and 506(a)). In keeping with the *Addison Properties* model and accepted practice, post-petition rents will not play a role in valuations of Condor's secured claim for adequate protection purposes. *See Delta Resources*, 54 F.3d at 729 ("[o]rdinarily, the matter of adequate protection is determined at or near the inception of the case"). By the same token, however, a separate valuation incorporating Condor's interest in post-petition rents shall be made at the point of confirmation, as required by section 552(b). Thus, the extent that Condor's interest in rents will pose a factor in upcoming value determinations will depend upon the context and circumstances involved. *Cf.* 11 U.S.C. § 506(a) (value of secured claims shall be determined in light of the purpose of the valuation and in conjunction with any hearing affecting that interest).